| 6 W | 357 |
| 207 | 543 |

## M'Manus *against* M'Culloch.

The law requires no particular form to constitute a valid submission to a referee;
nor is it necessary that it should be in writing.    Neither is it necessary that the
award should be in writing unless required by the submission.    An agreement of the
parties to refer, and the award of the referee, whether in writing or not, are equally
binding upon them.

ERROR to the common pleas of *Allegheny* county.

Henry M'Culloch against the administrator of Bernard M'Ma-
nus.    This was an action of *assumpsit* to recover the price of
goods sold and delivered by the plaintiff to James M'Dermott.

The plaintiff having given evidence of the sale and delivery of
the goods to M'Dermott, and M'Manus's promise to pay for them,
the defendant gave in evidence the following deposition.

The defendants to maintain the issues on their part, read the
deposition of Hugh Carragan, who being duly sworn according to
law, did depose and say:

[M'Manus v. M'Culloch.]

" I am acquainted with the parties, and have known them for five or six years; I recollect Henry M'Culloch in the fall of 1833, coming into my house, when I kept lock No. 15, and he told me that he was then going to Bernard M'Manus's house to see about getting the money he had promised to pay for James M'Dermott. I told him that M'Dermott himself, was then at work on the line. M'Culloch replied, that he would not be looking after M'Dermott, but will make M'Manus pay it if I can. M'Culloch stayed with me that night, and the next morning I went with him to M'Manus's, and he told M'Manus that he had come to settle some matters, and I want you to settle that of M'Dermott's among the rest; M'Manus then said, I have nothing to do with M'Dermott's, if I can pay my own debts it is as much as I can pay. M'Culloch then said, why, M'Manus, you came into my store, and my clerk did not know M'Dermott, and you said that if M'Dermott did not pay for the goods that he bought, that you would pay for them. M'Manus then said, ' did M'Dermott pay you the bill that I passed my word for?' M'Culloch then said, ' he did, but I gave him more,' and M'Manus replied, if you gave him any thing more I will not pay for it: and M'Culloch said, Jamie, meaning M'Dermott, owes 70 or 80 dollars; M'Manus then said, Jamie is in my debt also, and he is going to the bad very fast, and you ought to look after him; M'Manus said, let us go to Blairsville, and we will leave it to M'Cabe to say, whether I am bound to pay you M'Dermott's debt or not, and they then agreed to do so, and be bound by what he would say, and have no law suit about it; M'Cabe is a lawyer at Blairsville. They went to Blairsville, and as I was going, I went with them; they went to M'Cabe's office, and sometime afterwards, I met them both coming back together, and we all stopped at M'Anulty's tavern, and when in the room, I asked if they had got that matter settled, and M'Manus said, ' I am content with what M'Cabe said;' M'Culloch seemed dissatisfied, and M'Manus then said to him, I want you to say, whether you will abide by what M'Cabe said or not, as I want to have the business settled now; M'Culloch then said, it is a hard case for me to lose by M'Dermott, and M'Manus said, you knew him as well as I did; M'Culloch then said, I must be going, for I am in a hurry, M'Manus again asked M'Culloch to say, whether he was content with what M'Cabe said, and M'Culloch then said, I am perfectly content with it, and we are as clear on that concern of M'Dermott's money, as the day we first met; and M'Culloch then said, there is some little balance coming to me on your own account; M'Manus then said, if there is any thing due you on my own account, just call with me on your way down and I will pay it. I learned from both the men, that the decision of M'Cabe was, that M'Manus was bound to see the goods paid for that M'Dermot bought first, when M'Manus was in the store, but he was bound for no more.

[M'Manus v. M'Culloch.]

They shook hands and parted friends, and were glad that they should have no law suit about it. M'Manus at the time was in good circumstances, and I found him good pay."

The defendant requested the court to charge the jury, that if they believed the facts stated in the deposition of Hugh Carragan, the submission and award were a conclusive bar to the plaintiff's action.

But the court below charged the jury, that the character of the submission and award were not such as to bar the plaintiff's right to recover.

*Findlay,* for plaintiff in error.
*M'Candless,* for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—Two matters in the charge of the court to the jury have been assigned for error. In the first, we perceive nothing wrong : but in the second, we think the court erred. The counsel, on the trial, for the defendant below, who is the plaintiff in error here, read in evidence to the court and jury the deposition of Hugh Carragan, who, among other things, testified, that in the fall of 1833, M'Culloch asked M'Manus, the intestate, being then in full life, to settle, that is, to pay the demand in question; the latter refused, said he had nothing to do with it; the other, however, insisted that the latter had made himself liable to pay it, which the latter persisted in denying; and at length said, " let us go to Blairsville, and we will leave it to M'Cabe, (meaning a gentleman of the bar, who resided in that place at the time) to say, whether I am bound to pay you M'Dermott's debt or not." They agreed to do so, and to be bound by what he would say, and have no law suit about it. They accordingly went to Blairsville, and as witness was then about going thither, went in company with them. They went to Mr M'Cabe's office, and after sometime, witness met them both returning from his office, when they all stopped at M'Anulty's tavern, where witness asked the parties if they had got that matter settled; M'Manus said, " I am content with what M'Cabe said;" but M'Culloch seemed dissatisfied; M'Manus then said to him, " I want you to say, whether you will abide by what M'Cabe said or not, as I want to have the business settled now." And after some further conversation between them, as narrated by the witness, but not necessary to be repeated here, M'Culloch said, " I am perfectly content with it, and we are as clear on that concern of M'Dermott's money, as the day we first met." The witness then in the conclusion of his deposition, further testifies, that they both told him that the decision of M'Cabe was, that M'Manus was bound to see the goods paid for, which M'Dermott bought first, when M'Manus was in the store, and were admitted by M'Culloch to have been paid for by M'Dermott

[M'Manus v. M'Culloch.]

himself, but was bound for no more.   The parties then shook hands and parted, glad that they should have no law suit about it.

The counsel for the defendant below, upon the testimony being closed, requested the court to charge the jury, that if they believed the evidence of Carragan, the decision or award of M'Cabe was binding and conclusive upon the parties, and that their verdict ought, therefore, to be for the defendant.   The court, however, instructed the jury, " that the deposition of Hugh Carragan did not make it clear, that there was a reference of the binding character contended for by the counsel of the defendant, but of this the jury would judge."   And added, " the court can see nothing in the deposition, the legal effect of which would necessarily be, to discharge the defendant from all liability; the instruction, therefore, requested is not given."

Now in order to give the arbitrator full power and authority to make his decision binding and conclusive upon the parties to the submission, when the submission is an immediate act of their own, it is not necessary that it should be made in any particular form; it may be done by parol, that is, by word of mouth merely, or writing without seal; or it may be made by writing under hand and seal of the parties.   Neither is it necessary, that the award should be in writing, unless the terms of the submission should seem to require it. But when made in pursuance of, and agreeably to the submission, it will be alike binding upon the parties, whatever the form of submission may be.   No technical phrases, or set form of words are requisite to constitute a submission; it is sufficient, if it appears from what has passed between the parties, that they mutually agreed to submit the matter in dispute between them, to the decision of the person or persons named and mutually agreed on by them for that purpose.   And though, at one *time it would seem*, that where the award was for any collateral act, and not for the payment of money, as if an express promise to perform it, was deemed requisite to enable the party, in whose favour the award was given, to maintain an action for the non-performance of it, yet it has long since been held, and taken, that in either case, the very act of submission, implies a promise by the party to abide by the determination of the person to whom the matter is referred; and mutual promises being thus given, form a sufficient consideration in law, to render the promise of each to the other, that he will abide by and perform the award, binding.   See Truman *v.* Bernard, 1 *Ld. Raym.* 248; Squire *v.* Grevell, 2 *Ibid.* 965; S. C. 6 *Mod.* 35; Boisloe *v.* Baily, 2 *Ld. Raym.* 1039, 1040; S. C. 6 *Mod.* 221; Knox *v.* Simmonds, 3 *Bro. Ch.* 361; *Kyd on Awards* 8, 9, 10, 11.   The submission being under the authority of the common law here, the arbitrator is to be considered as a judge or tribunal of the parties' own choosing; and his decision or judgment cannot be set aside, unless for partiality or corruption; which will not be presumed on slight grounds, but must be clearly shown.   Hence an award being

considered in the nature of a *judgment,* is in this respect different from an *award,* which will not bar an action founded upon the original cause, without being executed though the former will. Allen *v.* Harris, 1 *Ld. Raym.* 122. Accordingly it was ruled by Lord Kenyon in Bailey *v.* Lechmere, 1 *Esp. Ca.* 377, where a party had agreed verbally to refer all matters in difference to an arbitrator, and the arbitrator had given his decision thereon verbally, that such determination was conclusive and binding on the plaintiff, and that he could not be allowed to go into the original case at the trial, without showing some misconduct on the part of the arbitrator. Lord Kenyon, also said, "he had ruled before, that where parties had agreed to submit their differences to any third person, to settle their disputes, and that such person did undertake the business, and made any award or order respecting them, the parties should be bound by it, and that he who was dissatisfied with the determination, should not be allowed then to have recourse to an action: for, that after taking his chance for having a determination in his favour, he was then too late to recede from his engagement."

Now as to the evidence of Hugh Carragan, he testifies positively and expressly, that the intestate of the defendant below in his lifetime, and the plaintiff in the autumn of 1833, not only agreed to submit the very matter in dispute here to the determination of Mr M'Cabe, which would have been sufficient without more, but that they, also, expressly agreed to be bound by what he would say, and accordingly went to the office of Mr M'Cabe in order to obtain his decision; that in a short space of time afterwards, he met them returning from the office, when they told him that Mr. M'Cabe had decided it; and each mentioned to the witness, as stated already, what the decision was. We think, that nothing could be more direct and explicit than the evidence of Carragan in going to show a deliberate submission of the matter in dispute here by the parties, to the arbitrament of Mr M'Cabe, and that in pursuance thereof, it was given in favour of the intestate. It is no objection to the validity and binding character of the award, that it was made or given by the arbitrator without any witnesses being produced before him by the plaintiff below: it does not appear, that the latter was deprived of the opportunity of adducing them by the arbitrator: nor that he had any wish or desire to have any present. For aught that appears, he was fully heard by the arbitrator, and took the risk upon himself of submitting his case in the manner he did to the arbitrator for his decision thereon. Besides, it would seem, that he acquiesced in it as long as M'Manus lived, and never made any claim in opposition to it, that we hear of, until after the death of M'Manus, when he brought this suit against his administrator in the autumn of 1835, some two years after the decision of the arbitrator. We, therefore, think, that the court ought to have charged the jury, that, if they believed the testimony of Carra-

gan, the plaintiff below was clearly barred of his action by the award of the arbitrator, and that their verdict ought, therefore, to be in favour of the defendant. And we may also add, that we do not see how it was possible for the jury to discredit the evidence of Carragan, seeing neither it, nor his character was even attempted to be impeached.

Judgment reversed, and a *venire de novo* awarded.