57  266
148 . 247

## Wilson *et al.* versus Getty *et al.*

## Getty *et al.* versus Wilson *et al.*

1. No technical phrases or set form of words are required to make a binding reference. It is sufficient if it appear that the parties agreed to submit the subject to the person named.

2. In an agreement of sale, "a lawful deed of conveyance" means a deed conveying a lawful or good title.

3. In a contract to convey land, it was agreed that the purchase-money with the deeds should be deposited in a bank, "which is to be paid over to the party of the first part as soon as Wm. A. Porter, counsel for the parties, pronounces the deed to be complete and perfect." Mr. Porter pronounced that the deed was not complete and perfect. *Held*, that the contract was at an end, and the vendee had a right to the return of the money deposited.

4. If a case is made out which will justify the court in declaring a contract at an end, it will in general be ordered to be delivered up to be cancelled.

5. Whenever a deed or writing ought not to be used, it is against Equity for the party holding it to retain it.

February 17th 1868. Before Thompson, C. J., Strong, Agnew and Sharswood, JJ. Read, J., at Nisi Prius.

Certificate from Nisi Prius: In Equity: Nos. 38 and 66, to January Term 1866.

These were a bill and cross-bill.

The bill was by William Getty and others against Samuel Wilson, Thomas Baker and others, amongst whom was The Philadelphia National Bank.

The cross-bill was by Samuel Wilson, Thomas Baker and others, who (except The Philadelphia Bank) were defendants in the bill, against William Getty and others, plaintiffs in the bill, and The Philadelphia National Bank.

By agreement, Thomas Robins was afterwards substituted in each case in the place of the Bank.

The bill set out, amongst other things, that on the 24th of January 1865, by an agreement in writing, signed by both parties, Samuel Wilson, one of the defendants, agreed to sell and convey to William Getty, one of the plaintiffs, a tract of land in Clarion county for $50,000, in certain instalments, the first of $15,000, with the deeds to be deposited in bank, and to be paid to Wilson as soon as William A. Porter, Esq., should pronounce the deed to be complete and perfect; that the other plaintiffs were jointly interested with Getty;—and the other defendants, except the Bank, with Wilson; that about the date of the agreement the plaintiffs deposited the $15,000, and the defendants deposited a deed and other papers connected with the title, in The Philadelphia National Bank, enclosed in a package, on which was endorsed what were the contents, and "to be delivered only to William Getty, R. T. Elliott, Samuel Wilson and C. L. Lamberton," and that

[Wilson v. Getty.]

the package was still in the bank; that the title was pronounced by Mr. Porter to be incomplete and imperfect; that in April 1865 the plaintiffs notified the defendants that on account of the defectiveness of the title they rescinded the contract and demanded a return of the money in bank.

The plaintiffs prayed that the contract might be declared lawfully rescinded and delivered up to be cancelled, and that the $15,000 should be returned to them, and for general relief.

The article, after the agreement to convey, proceeds as follows, viz. :—

" In consideration thereof the party of the second part agrees to pay to the party of the first part the sum of $50,000, $15,000 to be deposited in bank with deeds for the above-named property, which is to be paid over to the party of the first part as soon as William A. Porter, counsel for the parties, pronounces the deed to be complete and perfect; $10,000, which is the second payment—this to be paid to the party of the first part on April 1st 1865; $10,000, which is the third instalment, to be paid to the party of the first part on May 1st 1865; $15,000 to be paid June 1st 1865."

The answer of Mr. Robins was, that he held the package for the parties without having any interest in it, and submitted himself to the order of the court.

The remaining defendants, amongst other things, averred that the title was valid, and denied that they were bound by Judge Porter's opinion.

By the cross-bill the plaintiffs aver that they have kept their part of the covenants, that the defendants have failed to keep theirs, that the bank refuses to deliver the $15,000 without the consent of the defendants, and pray that it may be decreed:—that the agreement be delivered into the custody of the court; that the Bank shall pay them the $15,000; that the defendants shall pay them the unpaid instalments with interest; and for general relief.

The case was referred to Robert N. Willson, Esq., as examiner and master.

He made an able and exhaustive report on all the questions raised by the bills, answers and evidence.

Amongst other things he reported :—

" It is not disputed that the title to the property in dispute was submitted to Mr. William A. Porter, and that he pronounced it defective." * * * * " With the adverse decision of the umpire upon the title submitted to him, it is the opinion of the master that the whole contract came to an end."

" Upon this ground, then, the master would also refuse a decree for specific performance, and grant the prayers of Getty *et al.* for the rescission of the contract and return of the money deposited."

[Wilson *v.* Getty.]

He further reported :—

"In view of the reasons given, the master would recommend to the court that the bill filed by Wilson *et al.* be dismissed, and that a decree be made declaring the aforesaid agreement between Wilson and Getty to be rescinded and null and void, and also that Mr. Thomas Robins be directed to open the package intrusted to his charge by the vendees, and pay over to the plaintiffs in the bill filed by Getty *et al.* the money therein contained, and deliver to Mr. Baker or to his order the other papers and documents also enclosed therein."

Exceptions were filed by Wilson and others, defendants in the bill and plaintiffs in the cross-bill, to the part of the report given above.

Getty and others, plaintiffs in the bill, filed exceptions to other parts of the report.

The court at Nisi Prius overruled the exceptions, confirmed the report and decreed :—That the agreement between Getty and Wilson be cancelled and declared null and void : That Robins open the package, pay over to the plaintiffs or their counsel the money therein contained, and deliver to Thomas Baker or to his order the other papers and documents also enclosed therein : And that the defendants (except Thomas Robins) pay the costs of this proceeding; and that the costs of the defendants, the Philadelphia National Bank and Thomas Robins, as well in this cause as in the cause of Wilson *v.* Getty, be paid out of the said moneys in the hands of the said Thomas Robins.

Both parties appealed.

*T. Cuyler* (with whom was *W. W. Juvenal*), for Wilson and others.—The submission to an umpire must be clear and explicit : Harris *v.* Leggett, 1 W. & S. 305; Lauman *v.* Young, 7 Casey 310; Phipps *v.* Buckman, 6 Id. 402; 2 Parsons on Cont. 706, and note; Mon. Nav. Co. *v.* Fenlon, 4 W. & S. 208; Falconer *v.* Montgomery, 4 Dall. 232; Dalzell *v.* Crawford, 1 Parsons 51, 58; Deverell *v.* Lord Bolton, 18 Ves. 506; Vancouver *v.* Bliss, 11 Id. 465.

*W. McElroy, G. W. Biddle* and *W. A. Parker*, for Getty *et al.*—The act of submission implies that the parties agree to be bound : McManus *v.* McCulloch, 6 Watts 360; Bowen *v.* Cooper, 7 Watts 311, 1 Bac. Abr. 306; Speer *v.* McChesney, 2 W. & S. 233.

The opinion of the court was delivered, February 27th 1868, by SHARSWOOD, J.—The master to whom these cases were referred in the Court of Nisi Prius has examined and discussed with great research and ability many interesting questions which were raised.

[Wilson v. Getty.]

It was entirely proper that he should do so, as he could not antici-pate what the judgment of the court would be. It will be unne-cessary, however, to consider and decide them here, as there is one point which, in our opinion, disposes of the whole controversy.

By an article of agreement dated January 24th 1865, Samuel Wilson agreed to sell and convey to William Getty a certain mes-suage and tract of land in Clarion county, containing 650 acres, more or less, for the consideration of $50,000: $15,000 to be deposited in bank with deeds for the property, which was to be paid over to Wilson " as soon as William A. Porter, counsel for the parties, pronounces the deed to be complete and perfect." The balance of the purchase-money was to be paid in instalments, $10,000 April 1st 1865, $10,000 May 1st 1865, and $15,000 June 1st 1865. Prior to the execution of the agreement there had been deposited with Mr. Robins, the president of the Phila-delphia National Bank, a package containing a deed from Thomas Baker and wife to Peter B. Simons, a grantee named by Mr. Getty, for the tract of land in question, with various powers of attorney and certificates of search relating thereto, and also the $15,000 called for in the agreement. The vendor accordingly submitted to Judge Porter a brief of the title to the tract of land in question, which after examination he pronounced to be defect-ive, and so informed the parties. Soon after the vendee notified the vendor that he declined to accept the property in consequence of this decision, and demanded the return of the money which had been deposited in bank.

If, upon the true construction of this agreement, Judge Porter was appointed a referee to decide whether the title was a good one, his decision must be regarded as conclusive upon the parties whe-ther it was right or wrong. No technical phrases or set form of words is required to make a binding reference. It is sufficient if it appears that the parties mutually agreed to submit the subject to the person or persons named: McManus v. McCulloch, 6 Watts 360. In Speer v. McChesney, 2 W. & S. 233, a person was chosen to measure a job of mason work, and the parties agreed to abide by his measurement. In Leebrick v. Lyter, 3 W. & S. 365, it was merely provided that the quantity of stone in a wall should be measured by the engineer of the canal. The only question was, who was the person intended as the referee. The gentleman named in the agreement in this case is described as the counsel of the parties, that is of both parties. The first payment was to be made as soon as he pronounced his decision. The other pay-ments were to follow in quick succession. The whole purchase-money was to be paid in little more than four months from the date of the contract. The vendee would have had a right, inde-pendently of any agreement, to have the title examined by his own counsel, and to decline the purchase, if it was unmarketable.

But then he might be subject to an action for damages, or a bill in equity for specific performance, and perhaps if the title, though really defective at the time, were perfected at any subsequent period before a final decree, he could be compelled to accept it. It did not please him to incur the risk of such delay and expense, or to be liable to be called on at some future time for this large sum of money, when the opportunity of profit, which he had calculated upon, had slipped by. There was nothing, therefore, unreasonable in such a reference. So far from it, looking at the character of the property and the terms of the contract, it was wise to provide that the question of title should be promptly and amicably settled. It was wise in the parties to make such a reference, if they could unite in the choice of a gentleman, in whose legal acquirements, experience and sound judgment they both had confidence. What was he to determine? Whether the deed was complete and perfect. What deed? Evidently the deed Thomas Baker and wife to Peter B. Simons, which had previously been deposited with the money to be paid over, and which was a mere escrow in the possession of Mr. Robins. Of course not merely that it was a formally drawn and properly executed deed, but that it would convey a complete and perfect title in fee simple. By a lawful deed of conveyance, in an agreement of sale, is to be understood a deed conveying a lawful or good title: Dearth *v.* Williamson, 2 S. & R. 498. He was not to decide whether the vendor could at some future time procure a good title, but whether a complete and perfect title could be vested in the grantee named by the vendee by the delivery of the deed then executed and delivered in escrow. Both parties contemplated a prompt determination of the question, and when it was afterwards proposed to perfect the title through judicial proceedings and a sheriff's deed, another and subsequent deed to the one mentioned and referred to in the contract, Judge Porter very properly declined to act. He was *functus officio*. He had decided the only matter, which both parties had agreed to submit to him. It would contravene the whole object and intent of the contract to inquire now whether he ought to have come to a different conclusion upon the question presented to him, much less whether the title was subsequently rendered perfect. We think, therefore, that this contract was at an end when the referee named in it pronounced that the deed was not complete and perfect, and the vendee had a right to have returned to him the money which had been deposited as the first payment under it.

There are many cases in which equity will refuse to decree the specific performance of an agreement, which it will decline to rescind, thus leaving the parties to their legal remedies. But if a case is made out which will justify the court in declaring a contract at an end, it will in general be ordered to be delivered up

[Wilson *v.* Getty.]

to be cancelled. Whatever doubts may at one time have been entertained, the jurisdiction of a court of equity in such cases is now established in its fullest extent: 2 Story Eq. §§ 699, 700. Whenever a deed or writing ought not to be used, it is against conscience for the party holding it to retain it. Whether it is inequitable from fraud, accident or mistake, or it has become so from entire failure of consideration, while it exists it is always liable to be applied to improper purposes, and it may be vexatiously litigated at a distance of time when the proper evidence to repel the claim may have been lost or obscured.

Decree affirmed at the costs of the appellants.