## John A. Donahue & Son v. Barclay White Company, Inc.

*Arbitration—Award—Finality — Evidence — Fraud, collusion or misconduct—Member of board leaving hearing—Notice not to be bound by award.*

1. Where parties have voluntarily submitted their matters in dispute to a board of arbitrators, they are bound by the award, unless it be shown by evidence that is clear, precise and indubitable that the parties were not given a hearing, and that there was fraud, misconduct or corruption or some other irregularity on the part of the arbitrators which caused the board to render an unjust, inequitable and unconscionable award.

2. If one of the parties is refused a hearing or believes that he will not get a fair hearing, he must notify the board that he refuses to abide by its decision, instead of waiting and taking his chance of an award in his favor, and then, when the award is not satisfactory to him, refusing to be bound.

3. The refusal of one of the members of the board to hear the testimony of one of the parties or to remain at the hearing is not sufficient to vitiate the award in the absence of proof that the incident had any influence on the remainder of the board.

Rules for new trial and for judgment *non obstante veredicto*. C. P. No. 5, Phila. Co., Dec. T., 1924, No. 861.

*Conard & Middleton*, for rules; *M. J. McEnery*, contra.

MARTIN, P. J., May 24, 1927.—The plaintiff, John A. Donahue, trading as John A. Donahue & Son, instituted this suit against Barclay White & Company, Incorporated, to recover $6221.48, with interest from Dec. 7, 1923, alleging a contract between the plaintiff and defendant dated July 14, 1922, providing for furnishing labor, materials, tools and doing the lathing and plastering on the building described in the agreement, for the price of $12,770. Plaintiff claims for extra work done under authority of written orders from the architect, $887, making the total claim $13,657. Credit is allowed for $9810.91 paid on account, leaving a balance of $6221.48.

The amount of plaintiff's claim was disputed by defendant, and the parties agreed to refer the matter to the Board of Arbitration of the Builders' Exchange by an agreement that stipulated: ". . . The parties hereto hereby submit by this agreement all matters in dispute between them with regard to the amount of money which should be paid by the party of the second part to the party of the first part for work and labor or materials furnished to the said Dunwoody Home for Convalescents and Power House, under the terms of the contract hereinbefore referred to, to the said Board of Arbitration of the Builders' Exchange under the rules and regulations of the Builders' Exchange, and subject to such rules or procedure as may be agreed upon and provided by the said Board of Arbitration of the Builders' Exchange."

The parties appeared before the Arbitration Board on Sept. 3, 1924. The Arbitration Board made an award to plaintiff of $3322.87, and a check for that sum was delivered to his counsel on Sept. 9, 1924. The check was tendered as payment for the full amount due by defendant to plaintiff, but was accepted under protest and as a credit upon the sum claimed by plaintiff. The amount of the check is included in the credit allowed defendant in determining the balance claimed by the plaintiff in this suit.

The award made by the Philadelphia Builders' Exchange and Employers' Association was, "That Barclay White & Company is entitled to pay to John A. Donahue & Son the sum of $3322.83 in full and complete settlement of the matters in dispute between the two parties as they appear in the papers and data submitted."

Plaintiff, being dissatisfied with the award of the arbitrators, brought this action to recover the balance which he claimed, and averred that at the time

set for the hearing plaintiff appeared before the arbitrators with his witnesses, but the arbitrators refused to grant him a hearing, and one of the board said he had heard enough and left the room. Plaintiff claims that the award is not binding upon him. At the trial, counsel for the plaintiff offered to prove by a witness that he went to the meeting of the Arbitration Committee, made up of members of the Builders' Exchange. A member of that Exchange was the defendant, Mr. Barclay White, who was at that time a candidate for the presidency of the Builders' Exchange; that upon the arrival of Mr. Donahue in company with his clerk and superintendent, Mr. Broomall, and accompanied by counsel, Mr. Donahue was admitted to the meeting, and later his clerk was admitted; and that Mr. Donahue offered to give his reasons for the extra charge or costs for the services of plasterers; that this was refused; and that, before he could be further heard, a member of the Arbitration Board, to wit, one Mr. James Davies, took up his hat and said he did not wish to hear anything further, and walked out and left Mr. Donahue present.

This offer was objected to by the attorney for defendant because the offer did not rise to the dignity of such an allegation of fraud as would vitiate the findings of any arbitrators; the absence of a right to go into the procedure before the board; that the objections were not made to the board, or until after the award was made; and that nothing was done by way of criticism or exception to the conduct of the board until this suit was brought, and that some of the allegations are not within the statement of claim. While the statement of claim sets up certain allegations, it does not allege fraud participated in by the defendant, which is essential to take it out of the binding effect of an arbitration.

The objections were overruled by the trial judge, the evidence was submitted and the verdict was for plaintiff in the amount of $2754.55, with interest from May 7, 1924. A motion was made by the defendant for judgment *non obstante veredicto*, and a rule entered for a new trial.

If the award of the arbitrators is binding upon the plaintiff, the defendant is entitled to judgment *non obstante veredicto*.

Bouvier's Law Dictionary (3rd ed.), at page 225, defines "arbitration" as "the investigation and determination of a matter or matters or differences between contending parties, by one or more unofficial persons chosen by the parties, and called arbiters or referees."

"Arbitration" is defined by Webster as the "act of arbitrating; especially the hearing and determination of a case between parties in controversy, by a person or persons chosen by the parties, or appointed under statutory authority, instead of the judicial tribunal provided by law; the hearing and determination of a matter in dispute by an arbitrator or arbitrators. The matter may be submitted by an agreement, usually called a submission, to one arbitrator or two, who are to choose a third, called an umpire. The decision is called an award. At common law, arbitration is entirely voluntary and a submission to arbitration is revocable by either party, or avoided by his death before the award is fully made. . . . The scope and method of arbitration are not bound by the rigid rules or legal procedure which are binding upon a judicial tribunal, whether acting by itself or by a referee in an amicable suit or otherwise."

The courts have always encouraged amicable settlements between parties litigant, either by arbitration or otherwise, and it is a well-known rule of law that neither party to an action will be permitted to introduce at the time of hearing any negotiations between the parties litigant that were made in an attempt to settle or compromise the case. This rule is important; and just

as important that where parties have voluntarily submitted their matters in dispute to a board of arbitrators, they should be bound by the award of the board, unless it be shown by evidence that is clear, precise and indubitable that the parties were not given a hearing, and that there was fraud, misconduct or corruption or some other irregularity on the part of the arbitrators which caused the board to render an unjust, inequitable and unconscionable award.

An award will not be disturbed except for very cogent reasons. It will be set aside for misconduct, corruption or irregularity of an arbitrator which had or may have injured one of the parties: Walls v. Wilson, 28 Pa. 514.

The attorney for the plaintiff, at the time of the trial, referred the trial judge to the case of Kann v. Bennett, 234 Pa. 12, and argues that the conduct of Mr. Davies in getting up and leaving the room was such as would warrant the court in holding that the award should be set aside by reason of the misconduct of this arbitrator. Mr. Justice von Moschzisker, in his opinion, stated: ". . . So long as the architect acted independently without fraudulent collusion with the owner, his decision was final in all matters within the scope of his authority under the contract. 'Although an award, like a judgment, may be impeached for fraud, yet the fraud must be actual and not constructive. Partiality and some improper conduct on the part of the arbitrator in making the award would not impeach it, unless the party benefited thereby be implicated in the misconduct. General allegations of fraud without stating the facts which constitute them are not sufficient:' Hostetter v. Pittsburgh, supra; Com. v. Pittsburgh, 206 Pa. 379. The defendant's attempt to attack the integrity of the award did not amount to more than a general allegation of fraud. Many of his offers of evidence contained no facts at all, and those stated in the other offers, if proved, were not sufficient to justify an inference of fraud of the character required to be shown in order to avoid such an award. An offer to show fraud should indicate the facts upon which the charge is predicated, for fraud is largely a conclusion of law from facts stated, and it must be made clear to the mind of the court that, the inferences being drawn in favor of the party making the offer, the fact, if proved, would be sufficient to sustain such a finding. We cannot say that the court below committed error in refusing so to view the offers of the defendant."

It does not appear from the evidence that the plaintiff in this case, by reason of the alleged misconduct of the arbitrator, made known to the Board of Arbitrators that he was unwilling to abide by any award it might make, and no formal protest was made by the plaintiff until after the award.

In McManus v. McCulloch, 6 Watts, 357, 360, the court held: ". . . The submission being under the authority of the common law here, the arbitrator is to be considered as a judge or tribunal of the parties' own choosing, and his decision or judgment cannot be set aside unless for partiality or corruption, which will not be presumed on slight ground, but must be clearly shown."

In Christman v. Moran, 9 Barr, 487, Gibson, C. J., states the law as follows: "It is most true that arbitrators assembled and sworn have not power to supply a vacancy in their number, but they may supply it with the express or implied assent of the parties, and this distinguishes the case in hand from Wilson v. Cross, 7 Watts, 495, in which the party affected by the award had done nothing to sanction the proceeding which led to it. In that case he had gone away protesting; in this he remained protesting, but participating. He proceeded with his defence protestando, but intending to take his chance before the arbitrators and thus obtain the advantage of being loose or bound at his election. But he was bound to give up his chance or his objection, for

they could not exist together. Had the arbitrators awarded in his favor, he might, notwithstanding his protest, have enforced the award; and mutuality of submission requires that both should be bound or neither. But had even both parties agreed to proceed, each reserving the same objection, neither would, according to the principle of the argument, have been bound, and the hearing would have been a mockery. By agreement to go on, both waived the exception, and both are bound to stand to the award."

In the case of Bingham's Trustee v. Guthrie, 19 Pa. 418, 423, it was said: "Arbitrators are a domestic tribunal often preferred by parties, and in many cases better calculated by their habits of procedure to do them justice than courts and juries. The policy in Pennsylvania has been to encourage arbitration, and the courts have inclined to a liberal construction of the acts of assembly which relate to them. It is, moreover, to the public interest that an end be put to litigation and that multiplicity of suits be discouraged. When, therefore, parties come before arbitrators chosen to decide a particular controversy in a pending action, see the men who are to be their judges and jurors and voluntarily agree to submit all matters in controversy between them to be passed upon in that action, and especially when they relieve the court from all future embarrassment arising out of the pleadings by mutually giving up the right of appeal, all interests, both public and private, and all principles, both of reason and law, concur in sanctioning their act and terminating their discords.

"In applying the award to the action pending, the court went not so far as was done with the sanction of this court in Gallup v. Reynolds, 8 Watts, 424. There an award not made under any statute was applied to a judgment in the Common Pleas and execution awarded on that judgment for the amount of the award. The court proceeded in that case on the agreement of the parties, and, for the purpose of ending their strifes, held them to the law they had made for themselves. The court below was in no error in doing likewise in the case before us."

In McCune v. Lytle, 197 Pa. 404, it was held: "The agreement to submit to arbitrators does not refer to any act of assembly, nor does it bind the parties to it, or the arbitrators, to proceed in accordance with the provisions of any statute. This agreement the parties had a right to make, and it gave the arbitrators power to act. After its execution, there was no longer to be a pending suit in equity. The contemplation of the parties was clearly a discontinuance of this and all the other proceedings, and all matters in controversy between them, 'involved in, or in any way concerning' this proceeding in equity, were to be settled and adjusted by the arbitrators. Such a submission the parties to it have an unquestioned right to make, and it should be faithfully adhered to, unless fraud or corruption or gross misbehavior by the arbitrators should vitiate the award made in pursuance of it, for 'interest reipublicæ ut sit finis litium' is no less true of proceedings in equity than at law."

In the case of Somerset Borough v. Ott, 207 Pa. 539, the court held: ". . . Technical words are not required to make a binding reference, and the form of submission is not important if it clearly appears that the intent was to submit differences to arbitration and to abide by the award. An agreement to submit to arbitration may carry with it, by implication, the further agreement to abide by the award. 'The very act of submission,' it was said in McManus v. McCulloch, 6 Watts, 357, 'implies a promise by the party to abide by the determination of the person to whom the matter is referred.' That the award should be final was the very purpose of the reference. It was 'to pre-

vent all disputes and litigation.' If not final, it would represent nothing and would be the beginning and not the end of litigation."

The evidence submitted by plaintiff in this case does not rise to the standard that would justify the court in holding that there was fraud, collusion or misconduct on the part of the arbitrators in making their award. Neither does it appear that the conduct of Mr. Davies, one of the arbitrators, in getting up and refusing to listen to the plaintiff and his witness, had any influence upon the remainder of the board. The motion for judgment *non obstante veredicto* should be sustained.

After he had been refused a hearing, as he alleges, plaintiff gave no notice to the Board of Arbitrators, nor to the defendant, of his unwillingness to abide by its decision. He could not await his chances for an award in his favor, and then, when it was not in the amount he claimed, refuse to be bound by the action of the board. As soon as he believed he could not or would not get a fair hearing and a just and equitable award by the Board of Arbitrators which he helped to choose, by reason of their prejudice or misconduct, it was his duty to notify the board that he would no longer submit to its partial judgment.

Where the parties have submitted themselves to the jurisdiction of the court or trial judge, they cannot, after an adverse verdict has been rendered against them, set up a question of jurisdiction, or complain that their case was not properly at issue, or that it was tried by a judge who was prejudiced and for that reason did not give them a fair, impartial hearing: Michaels v. Binder, 5 D. & C. 603; Morgan v. Electric Co., 213 Pa. 151; Little v. Fairchild, 195 Pa. 614; Kroegher v. McConway Co., 149 Pa. 444; Kirchner v. Smith, 207 Pa. 431; Corporation F. & F. Co. v. Stoffregen, 264 Pa. 215; Jeannette Borough v. Roehme, 197 Pa. 230; American Trust Co. v. Kaufman, 287 Pa. 465; Byers v. Byers, 208 Pa. 23.

The failure of the plaintiff to give any notice, either to the Board of Arbitrators or to the defendant, that he would not be bound by the award that might be rendered is fatal to his claim entered in the Court of Common Pleas.

*Order.*

And now, to wit, May 24, 1927, upon consideration of the foregoing case, it is ordered and directed that judgment be entered in favor of the defendant *non obstante veredicto*. An exception to this action of the court is hereby entered for the plaintiff.