## Prudential Insurance Company of America, Appellant, *v.* Ptohides.

Argued May 4, 1936.

Before

KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John H. Scott,* of *Duff, Scott & Smith,* with him *John L. Miller,* for appellant.

*George A. Dawson,* with him *Walter L. Dipple* and *A. M. Oliver,* for appellee.

OPINION BY CUNNINGHAM, J., July 10, 1936:

On July 9, 1934, the appellant insurance company issued its policy in the amount of $1,000 upon the life of James W. Ptohides. The father of the insured, William Ptohides, was named as beneficiary and the policy contained, inter alia, the following stipulations:

"Preliminary Provision—This policy shall not take effect, if on the date hereof the insured be not in sound health, but in such event the premium or premiums paid hereon, if any, shall be returned."

\* \* \*

"Incontestability—This policy shall be incontestable

after one year from the date of issue, except for nonpayment of premium, ......"

The insured having died on January 2, 1935, and no action at law having been brought by the beneficiary (although proof of death was filed January 12, 1935) the company, on May 20, 1935, filed its bill in equity in the court below, averring, inter alia, that the insured was not in sound health on the date of the policy but at that time was, and previously had been, under the care of a physician and afflicted with "mitral regurgitation and chronic valvular rheumatic heart disease" which resulted in his death within six months after the policy issued; that, upon discovery of these facts, the company elected to rescind its contract of insurance, notified the beneficiary of its intention and tendered to him the premiums it had received in the amount of $15.84; and that the beneficiary refused to surrender the policy for cancellation. The material prayer of the bill was that the beneficiary be directed to surrender the contract for cancellation upon receipt of the collected premiums.

The court below, in banc, sustained the beneficiary's preliminary objections and dismissed the bill "for the reason that plaintiff has an adequate remedy at law." This appeal is by the insurance company from that decree.

We, therefore, now have before us a case in which a policy, incontestable after one year from its date, matured within that period, by reason of the death of the insured, but no action at law had been brought upon it by the beneficiary up to the date of the filing, within the year, of the present bill.

As it is apparent from several other appeals, growing out of similar circumstances and now pending in this court, that there is some contrariety of opinion in our courts of common pleas as to what amounts to a "contest" of liability and with regard to taking and re-

taining jurisdiction in equity in such cases,[1] we deem it proper to express fully our conclusions upon the questions directly and incidentally here involved.

These questions may be thus stated:

First. Does the death of the insured during the period of contestability affect the obligation of the company to act within that period if it desires to contest its liability?

Second. What kind of action must be taken by the company in order to institute a valid contest of its liability?

Third. Has equity jurisdiction to entertain and finally determine bills to compel the surrender of policies for cancellation, or should such bills, upon preliminary objections by the beneficiary, be dismissed or certified to the law side of the court for the reason that the company has an adequate remedy at law?

1. It has been definitely decided in this state that, unless otherwise specifically provided, the death of the insured during the period of contestability does not affect either the running of that period or the obligation of the insurance company to act within the time specified, if it desires to contest its liability under the policy. In Feierman v. Eureka Life Ins. Co., 279 Pa. 507, 124 A. 171, our Supreme Court said, the "incontestable stipulation is not affected" by the death of the insured within the period; "it survives and continues in unbroken force until it expires by its own limitation." Our case of Cohen et al. v. Metropolitan Life Insurance Company, 112 Pa. Superior Ct. 314, 171 A. 106, in which the insured died within the contestable period and the company sought to contest its liability after the expiration thereof, is to the same effect. The Feierman case was one in which the policy provided that it

[1] In some instances the bills have been dismissed, in others they have been certified to the law side of the court and some cases have been disposed of in equity.

should be incontestable after two years from its date; the insured died within that period but the proof of death was not filed until after it had expired. The company did nothing until the proof had been filed and suit commenced upon the policy; it then sought to defend upon the ground that the insured had made material representations relative to his risk which were false.

In considering that case, it must be kept in mind that the only thing actually decided by our Supreme Court therein was that the company could not defend upon that ground after the expiration of the period of contestability. It is true that in describing the purpose and effect of the clause, and in indicating the duty of the insurance company to take decisive action within the specified period, it was said:

"The great weight of authority supports the position that the insurer must at least disavow liability within the contestable period to be relieved,—not necessarily by legal action, but some definite step, specifying the ground of complaint, in such form as to effect a cancellation of the contract. The clause means precisely what its language states; the policy will not be challenged, opposed or litigated, and is indisputable after two years. During this period, the company may contest it for any sufficient reason. The incontestable clause is for the benefit of the insurer, in that it induces people to insure in the company, and requires no act of the insured to put it in motion or aid in the discovery of facts on which it may fasten to the insurer's benefit. Therefore insured's death within the time does not stop investigation or relieve of the duty to investigate false representations or other fraudulent circumstances on which the policy is based. The knowledge that false representations have been made must be ascertained within the two years, and, in the same time, the company, by some act, must rescind, cancel or notify the

insured or the beneficiary that it will no longer be bound by the policy."

In view of the question actually involved in that case, this language cannot properly be interpreted as a decision by our Supreme Court that mere notice to an insured, or, in case of his death, to his beneficiary, that the company intends to contest its liability, upon a specified ground, is sufficient. No notice of any kind had been given. Hence, the question of what action by the company would be sufficient to toll the running of the period was not before the court. If that question had been involved, it seems quite clear from the prior decision of the Supreme Court in Oplinger v. New York Life Insurance Co., 253 Pa. 328, 98 A. 568, that it would have been held that even a formal notice to a beneficiary, within the contestable period, to the effect that it rescinded the contract on the grounds of fraudulent representations and concealment of material facts by the insured and accompanied by a tender of the premiums collected, would not have been sufficient to enable the insurance company to defend, upon those grounds, against an action by the beneficiary upon the policy.

2. The next inquiry is whether the only legally effective way in which an insurer may "contest" its liability under a policy is by offensive or defensive proceedings in a court. In other words, is the contest contemplated by the clause a contest in court, either by the institution, within the time limited, of appropriate proceedings for the surrender and cancellation of the policy, or by making a defense to a suit brought within the period upon the policy?

In so far as we are informed, this question has not been squarely ruled upon by either of our appellate courts, but we think the rule established in New York and many other jurisdictions—that appropriate proceed-

ings in a court are essential to a valid contest by the insurer—should be adopted here.

The opinion of Mr. Justice CARDOZO, speaking as Chief Justice of the Court of Appeals of New York in the case of Killian et al. v. Metropolitan Life Insurance Company, 251 N. Y. 44, 166 N. E. Rep. 798, contains a full review of the authorities and an admirable discussion of the question.

The policy involved in that case provided that it should be incontestable after two years from the date of its issue except for nonpayment of premiums. It was issued November 28, 1923; the beneficiaries were the insured's wife and children; the insured died October 20, 1924. The company gave notice in November of that year that it denied liability on the ground of breach of warranty and fraud and obtained a release from the widow. On February 23, 1928, an action was begun in behalf of the children; the company answered with defenses of fraud and breach of warranty; the appellate division of the court below entered judgment in favor of the children upon the ground that the company had not "contested" its liability within the two years specified in the contract.

In affirming the judgment, Chief Justice CARDOZO said:

"The rule is now settled that under a policy in this form a contest by the insurer is too late if begun after two years from the date of issue, though within the time allowed for contest the insured has died (Piasecki v. Met. Life Ins. Co., 243 N. Y. 637; Mut. Life Ins. Co. of N. Y. v. Hurni Packing Co., 263 U. S. 167). In reaching that conclusion, there has been adherence to the rule that 'in case of ambiguity that construction of the policy will be adopted which is most favorable to the insured' (Mut. Life Ins. Co. of N. Y. v. Hurni Packing Co., supra). The question is still open how a 'contest' may begin. For the defendant, the contention is

that a definitive notice of rejection without more will make out a contest within the meaning of the policy. Support for that view will be found in some decisions (N. Y. Life Ins. Co. v. Feight, 29 Fed. Rep. (2d) 318; Great Southern Life Ins. Co. v. Russ, 14 Fed. Rep. (2d) 27; Feierman v. Eureka Life Ins. Co., 279 Pa. 507). For the plaintiffs, the contention is that notice of rejection is unavailing unless followed within the prescribed time by contest in a court. This view is upheld by most of the decisions in which the point has been considered (Northwestern Mut. Life Ins. Co. v. Pickering, 293 Fed. Rep. 496; cert. denied, 263 U. S. 720; Rose v. Mut. Life Ins. Co. of N. Y., 19 Fed. Rep. (2d) 280; Powell v. Mut. Life Ins. Co. of N. Y. 313, Ill. 161; Thistle v. Eq. Life Assur. Soc., 149 Tenn. 667, 670; Am. Trust Co. v. Life Ins. Co. of Va., 173 N. C. 558, 568; Wolpin v. Prudential Ins. Co. of America, 223 App. Div. 339; Travelers Ins. Co. v. Snydecker, 127 Misc. Rep. 66; Dee v. Metropolitan Life Ins. Co., 219 App. Div. 790; Telford v. Metropolitan Life Ins. Co., 223 App. Div. 175, dictum; Wright v. Mut. Benefit Life Assn., 43 Hun, 61; 118 N. Y. 237, dictum). Choice must now be made between the one view and the other.

"We think a notice of rejection without more is not the beginning of a contest within the meaning of the contract. Much can be said in favor of a different holding. In the presence of ambiguity we adhere to the construction adverse to the insurer. Repudiation of a policy is notice that a contest will ensue if insured or beneficiary shall make an attempt thereafter to enforce a claim of right. It is not a contest of itself. Repudiation before maturity (the subject of the contract being a policy of insurance) is not even such a breach as will sustain a remedy at law for the recovery of damages (Kelly v. Security Mut. Life Ins. Co., 186 N. Y. 16), though it may be the occasion for a declaratory judgment or other remedy in equity. Repudiation after ma-

turity is a step closer to resistance, but it is not resistance by course of law. From the viewpoint of the law, a contest in its proper meaning is still the *contestatio* of the Romans, or something close thereto. The word is redolent of association with witnesses and writs (cf. Buckland, Text of Roman Law, s. v. *litis contestatio;* Oxford Dictionary, s. v. *litis-contestation;* 3 Blackstone, Comm. 296).

"Repudiation is, indeed, an act too uncertain, one resting too often in biased recollèction, to be accepted as the equivalent of ordered battle in the courts. The value of a clause declaring a policy incontestable lies to no slight degree in the definiteness of the protection accorded to the holder. The good that it promises is in part a state of mind. After the lapse of two years the insured is no longer to be harassed by the fear that the policy will be avoided by interested witnesses asserting in later days that there was a disclaimer long ago. After a like lapse the beneficiaries are no longer to be subjected to the risk of forfeiture through notices or warnings that may be hard to disprove when the insured is in his grave. Alike for insured and for beneficiaries, there is to be the peace of mind that is born. of definiteness and certainty. The clause, in effect, if not in form, is a statute of limitations, established by convention, and like the statute is directed to remedies in court (Wright v. Mut. Benefit Life Assn., supra).

"A contest, then, begins when the insurer avoids, or seeks to avoid, the obligation of the contract by action or defense. If the insured or the beneficiary is plaintiff, suing to declare the policy in force or to recover money due, the contest takes its start when the insurer serves an answer disclaiming liability. If insured and beneficiary hold back, preferring to wait till the time for contest has expired, the point of beginning is the time when the insurer sues in equity to declare the policy annulled (Cohen v. N. Y. Mut. Life Ins. Co., 50

N. Y. 610, 625) . . . . . .For present purposes it is enough to say that a contest begins when the contestants, satisfied no longer with minatory gestures, are at grips with each other in the arena of the fight. When the fight is a civil controversy, the arena is the court."

The decisions in nearly all the states in which this question has arisen are in accord: 36 A. L. R. 1245; 64 A. L. R. 959; 6 Couch's Cyc. of Insurance Law §1435; 37 C. J. 540; 5 R. C. L. Perm. Supp. p. 3773. The Circuit Courts of Appeal, in which the question has been raised, are likewise in accord: New York Life Insurance Co. v. Hurt, 35 Fed. (2d) 92; Densby v. Acacia Mut. Life Assn., 78 Fed. (2d) 203, and the cases therein cited.

3. As a general proposition it has frequently been held that our courts, sitting in equity, will, upon a timely application, decree the cancellation of a policy of life insurance, upon proof of fraud by the insured in obtaining it: Equitable Life Assur. Society v. Klein et al., 315 Pa. 156, 173 A. 188, a reinstatement case; New York Life Insurance Co. v. Brandwene et ux., 316 Pa. 218, 172 A. 669, a proceeding against the insured; New York Life Insurance Co. v. Bodek Corp., 320 Pa. 347, 182 A. 384, a bill in equity against a beneficiary. See also Prudential Insurance Company of America v. Kudoba, 121 Pa. Superior Ct. 344, 183 A. 654 [2]. In those cases jurisdiction in equity was not challenged. It is now earnestly contended by the appellee that appellant has an adequate remedy at law and that equity therefore has no jurisdiction: Hyde v. Baker, 212 Pa. 224, 61 A. 823.

There can be no doubt that the present appellant has, by the filing of its bill within the time limited in the policy, instituted a valid contest of its liability to the beneficiary, in excess of the amount of the premiums re-

[2] Affirmed as to jurisdiction in equity, but reversed upon another point; 323 Pa. 30, 186 A. 793.

ceived. The court below, after reciting the averments of the bill, thus stated its reasons for its decree:

"It seems to us that the plaintiff company is amply protected and has no need of recourse to equity here. Everything which it now avers can be introduced by way of defense to the action which this defendant might bring upon the contract. If the insured were now alive the case would be entirely different; the plaintiff would have the right to file a bill for cancellation. In such case the plaintiff would have an equity which could not be enforced at law."

Obviously, the court below was quite right in holding that if an insured should be living when the contestable period was about to expire the company's only remedy would be in equity. That, however, is not the situation in this case and our inquiry is whether, under the facts here present, the beneficiary was entitled to have the bill dismissed upon the ground that the company has a full, complete and adequate remedy at law by defending against "the action which [the beneficiary] *might* bring upon the contract."

The general rule seems to be that where an instrument has been fraudulently obtained the concurrent jurisdiction of equity should be exercised unless the remedy at law is sufficiently complete and speedy, as compared with the equitable remedy, to make it equally adequate and efficacious: 10 R. C. L. Sec. 21, p. 278-9; 4 R. C. L. Sec. 9, p. 496. Compare John Hancock Mutual Life Ins. Co. v. Dick, 114 Mich. 337, 43 L. R. A. 566.

If this beneficiary preferred to have a trial by jury upon such issues of fact as may be involved in the controversy, he had ample opportunity to bring his action at law upon the policy.

As the question of the effect of an action at law by a beneficiary, brought before or after the filing of a bill for cancellation but at such a date within the contestable period as would afford the company an oppor-

tunity to file its affidavit of defense before the expiration of that period, is not now before us, we express no opinion upon it, but it seems reasonable to assume that a beneficiary could thus select his own forum.

Here, however, the beneficiary, by delaying more than four months after filing proof of the insured's death, has, we think, placed himself in the class of beneficiaries described in the Killian case as those who "hold back, preferring to wait till the time for contest has expired."

In any view of the matter, the appellee has declined combat upon the vital issues raised by appellant until such time as he may select, subject only to the general statute of limitations. Aside from the consideration that evidence may be lost during a period of prolonged delay, we think the proper administration of justice in general entitles the insurer to a reasonably speedy disposition of its contentions. It seems rather anomalous to require the company to file its bill for cancellation within the period, in order to protect its rights, and then forbid it to proceed because the beneficiary may at some indefinite future time bring an action at law. Upon this theory, the fact of the institution of the action in equity becomes the ground for holding that the equitable remedy is not necessary. A court of equity thus loses its character as a forum for litigation and becomes merely a place for giving formal notice. We, therefore, cannot agree with the court below in the conclusion that appellant has, upon this record, a complete, adequate and efficacious remedy at law.

Moreover, if any substantial dispute of fact should arise in the course of the trial in equity the chancellor always has authority, under Equity Rule 61, to frame an issue for trial before a jury and obtain its verdict for the purpose of informing his conscience. This was done in New York Life Ins. Co. v. Bodek Corp., supra,

although the verdict was not adopted by the court in banc.

It may be noted in conclusion, that Rule 49 provides that if the only objection sustained is that plaintiff has a remedy at law, "the bill shall not be dismissed, but shall be certified to the law side of the court for further proceedings." We do not turn our decision in this case upon the fact that the bill was dismissed rather than certified. In our opinion, certification would likewise have been improper in this case. As we understand the rule, it is applicable to cases in which the actor in equity has a remedy at law which he can pursue and control upon the law side of the court, i. e., to cases where the plaintiff in equity has stated a cause of action in which he would be the plaintiff in the "proceedings" upon the law side. Clearly, this would not be the situation in the kind of cases now under consideration.

It follows that the assignment of error to the decree appealed from must be sustained.

The decree is reversed at the costs of appellee; the bill is reinstated and the record remitted with a procedendo.

JAMES, J., dissents.