Overmiller, Appellant, *v.* Town and Village Insurance Service.

Argued March 11, 1941.

348

Before Keller, P. J., Cunningham, Stadtfeld, Rhodes and Hirt, JJ.

*John A. Hoober,* for appellant.

*Spencer R. Liverant,* for appellee.

Opinion by Cunningham, J., July 18, 1941:

This case comes before us on an appeal by complainant from a decree of the Common Pleas of York County, sustaining respondent's preliminary objections to and dismissing her bill in equity.

The bill was filed December 14, 1939, by Mae Overmiller, as administratrix of the estate of Wilson Trout, deceased, who, while walking along the highway, had been killed as the result of the alleged negligent operation of an automobile, the driver of which was insured by the respondent, Town and Village Insurance Service. According to the averments of the bill, respondent, through its duly authorized representative, agreed to pay complainant, as the personal representative of the decedent, the following items of expense, aggregating

$531.30, incurred by his estate in connection with his injury and death:

"For a tombstone $150; to complainant's husband for money laid out and expended for a funeral suit for the decedent $30; for opening the grave $15; for the minister officiating at funeral $6; for H. Sleeger & Sons, funeral expenses $219; for the York Hospital and medical care $65.30; to complainant's husband for lost time for telephone calls and other small incidentals $14 and the additional sum of $32 for administration expenses."

After complainant had executed and delivered to respondent a release covering the above items, the latter delivered certain drafts to her counsel, purporting to be in consummation of the settlement. These drafts, however, were not drawn in the amounts and to the persons specified in the above quoted paragraph. Without consultation with, or notice to complainant, or her counsel, a draft for an amount and to a person not named therein was included, viz., $100 to a Dr. W. F. Gimmel. In order to make up this $100, the amounts agreed to be paid for the tombstone and hospital expenses were reduced by $60 and $10, respectively, and the item of $30 for the funeral suit was eliminated. The bill then averred that complainant, being unwilling to agree to these changes, returned all of the drafts to respondent and demanded a return of the release, which demand was refused. The concluding averment was that the retention of the release constituted an illegal and fraudulent use thereof, wherefore, complainant, "having no adequate remedy at law," prayed the court "to decree the cancellation or a delivery of the said release. ......"

On December 28, 1939, respondent filed an answer raising the preliminary objections that the bill fails to set forth any cause of action "which would enable or require the defendant to answer on the merits" and that complainant has a "full, complete and adequate remedy at law."

The court below, in an opinion by ANDERSON, J., sustained these preliminary objections and dismissed the bill; this appeal followed.

The ground upon which the court below predicated its decision was that complainant has a "complete and adequate remedy at law." An excerpt from its opinion reads: "No injury has been done to complainant which cannot be remedied at law. She can bring her suit at law and secure redress if so entitled. In fact it was admitted at the argument that a suit in trespass had been started by the complainant against the policyholder. This fact in itself, of which the court may properly take judicial notice, would seem to be sufficient reason to deny equitable relief."

We cannot agree with this view of the case. It overlooks the important fact that in an action of assumpsit upon the agreement entered into with her by the insurance carrier of the tortfeasor, or in a suit in trespass under the wrongful death Act of April 26, 1855, P. L. 309, as last amended by the Act of April 1, 1937, P. L. 196, 12 PS §1602, complainant would be confronted with the release executed and delivered by her in reliance upon the undertaking of respondent to pay her the items set forth in the fifth paragraph of her bill. Assuming, as we must, the truth of the averments of the bill, we can see no shadow of right in respondent to retain possession of the release. The bringing of a suit by complainant, on the last day prior to the expiration of the statutory limitation of one year, to recover as damages the reasonable medical, funeral and other expenses necessitated by reason of the fatal injuries to the decedent (amendment of 1937) was a proper precaution upon the part of her counsel and in no way affects her right to maintain her present bill.

There can be no question about the general jurisdiction of a court exercising the powers of a court of equity to "direct and to enforce . . . . . . the surrender

and cancellation of written instruments *for due cause* and to grant such other relief as the party may be entitled to": 9 C. J. 1159 §4. (Italics supplied.) A universal example of "due cause" is fraud. For instance, it is well established that our courts, sitting in equity, will, upon timely application, decree the cancellation of a policy of life insurance, upon proof of fraud by the insured in obtaining it. See *Prudential Insurance Company of America v. Ptohides,* 122 Pa. Superior Ct. 469, 186 A. 386, and cases therein cited at page 478. As there stated (page 479), "The general rule seems to be that where an instrument has been fraudulently obtained the concurrent jurisdiction of equity should be exercised unless the remedy at law is sufficiently complete and speedy, as compared with the equitable remedy, to make it equally adequate and efficacious."

"In this Commonwealth chancery always assumes jurisdiction in relief of fraud and this is so whether or not the remedy in equity is more efficacious or adequate than an action at law": *Zoni v. Importers and Exporters Ins. Co. of N. Y.,* 338 Pa. 165, 167, 12 A. 2d 575.

We think the averment of the bill that "the said attempted retention of the said release" amounts to "an illegal and fraudulent use" of the instrument is a sufficient allegation of fraud to invoke equitable jurisdiction. Under complainant's averments, the release was delivered to respondent upon the express understanding that payment would be made by it in the amounts, for the purposes, and to the beneficiaries specified in the agreement. The withholding of the release in an effort to compel complainant to accept drafts in different amounts than had been agreed upon and one drawn in favor of a person not named in the agreement was a fraudulent use of the release. It is of little moment whether respondent's representatives had such a purpose in mind when the agreement was made and the release received or later conceived the idea of forcing

complainant, through retention of the paper, to pay a doctor's bill, the validity of which she refused to acknowledge.

"As a general rule courts of equity have jurisdiction to relieve against *every species of fraud* ...... A court of equity proceeds with but little regard to mere form": *Clauer v. Clauer*, 22 Pa. Superior Ct. 395, 399. (Italics supplied.)

In *Leahey et al. v. Leahey et al.*, 309 Pa. 347, 163 A. 677, the court decreed that a deed be cancelled where that relief was sought by a bill in equity not on the ground of any fraud in connection with its original execution but because the defendants thereafter fraudulently took possession of the instrument and recorded it before it had become effective by delivery.

Again in *Wilson v. Getty*, 57 Pa. 266, Mr. Justice Sharswood said (p. 271) : "Whenever a deed or *writing* ought not to be used, it is against conscience for the party holding it to retain it. Whether it is inequitable from fraud, accident or mistake, *or it has become so* from entire failure of consideration, while it exists it is always liable to be applied to improper purposes, and it may be vexatiously litigated at a distance of time when the proper evidence to repel the claim may have been lost or obscured." (Italics supplied.)

Under the averments of this bill, the writing here in question ought not to be used, and it is against conscience for respondent to hold it, in the absence of proof of its right so to do.

The assignment of error to the order of the court below dismissing the bill is sustained.

Decree reversed at the costs of appellee, the bill is reinstated and record remitted with a procedendo.