Gordon, Secretary of Banking, Appellant, *v.*
Home Indemnity Company.

Argued November 11, 1935.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Harry Sloberman,* with him *Bernard J. Kelley* and *Gerald F. Flood,* Special Deputy Attorneys General, and *Charles J. Margiotti,* Attorney General, for appellant.

*C. Donald Swartz,* of *Swartz, Campbell & Henry,* for appellee.

OPINION BY CUNNINGHAM, J., February 28, 1936:

This appeal is by the plaintiff from a judgment entered in favor of the defendant bonding company upon a case stated. Franklin Trust Company of Philadelphia, prior to the execution of the bond hereinafter referred to, had as two of its depositors, United Cigar Stores Company and Whelan Drug Stores Company. Under an arrangement with these companies, deposits were made by their authorized employees in and through the medium of more than fifty other banks, some of them located in Philadelphia but many situated at distant points. The deposits so made were, under the terms of a depository agreement, to be remitted by these various banks to the Franklin Trust Company at Philadelphia. One of them was the City National Bank, Miami, Florida, and the total amount on deposit therein for the Franklin Trust Company, through the plan and under the agreement, was, on the forenoon of Saturday, December 20, 1930, $10,039.12.

On July 18, 1930, The Home Indemnity Company, defendant and appellee herein, executed and delivered to the Franklin Trust Company, in consideration of an agreed upon premium, its bond to indemnify that company, "against any direct loss it may sustain under any deposit or deposits made by any authorized employees of depositors of the Franklin Trust Company, in authorized deposit accounts named in the schedule, in any bank or banks listed on the attached schedule ...... on account of the failure on the part of any

such bank holding such deposits to pay the same on due demand of the Assured made during the term hereof." Attached to the bond was a schedule containing the names and location of fifty-nine banks, the City National Bank, Miami, Florida, being the fifty-third name on the list. The term of the bond began on the third day of July, 1930, at 12:01 A. M., and ended at the same time on July third, 1931. The extent of the liability of the defendant under its bond as to any one bank listed in the schedule was limited to $2,500, and its aggregate liability was $50,000.

Franklin Trust Company suffered a loss, for the recovery of which this suit was instituted, by reason of the failure of the City National Bank to open its doors for business on Monday morning, December 22, 1930. Defendant had, in the meantime, attempted to cancel its obligation and the question involved is whether the bond was in full force and effect when the loss occurred. The applicable portions of the provision for cancellation read:

"This bond shall be deemed cancelled as an entirety at 12 o'clock night, standard time as aforesaid, upon the effective date specified in a written notice served by the Surety upon the Assured. ...... Such date ...... shall be not less than fifteen days after such service ...... and the Surety shall not be liable for any default occurring after the effective date of such cancellation."

On Saturday, December 6, 1930, defendant served upon Franklin Trust Company "notice of its election to cancel said bond in its entirety and as to each and every bank covered thereby," and added that the notice would "be effective from and after fifteen (15) days from its service."

The City National Bank was open for business during the forenoon of Saturday, December 20, 1930, and, as usual, closed at noon of that day. A special meeting of

its Board of Directors was held on Sunday night, December 21, 1930, at 11:50, and during the early morning of Monday, December 22d, a resolution was adopted directing its officers "not to open the doors of the institution Monday morning, December 22nd, 1930, and to turn over the institution to the Office of the Comptroller of Currency of the United States." Until the adoption of this resolution the City National Bank had never failed to pay Franklin Trust Company any deposit received under the depository agreement.

The contract was one of insurance (South Philadelphia State Bank v. National Surety Co., 288 Pa. 300, 305, 135 A. 748) and the provisions with which we are particularly concerned are those relating to its cancellation at the option of the insurer.

Counsel for the trust company argue in one part of their brief that as the City National Bank must have been insolvent when it closed in the usual course of business on Saturday, December 20, 1930, the loss occurred at that time. Then, citing Gregg's Estate, 213 Pa. 260, 62 A. 856, (interpreting the phrase "at least one calendar month" as used in the Act of April 26, 1855, P. L. 328), as well as Endlich on Interpretation of Statutes, Sec. 391, and other authorities, (holding that "when so many 'clear days' or so many days 'at least' are given to do an act, or not 'less than' so many days must intervene, both the terminal days are excluded") they contend that both the 6th and 22d days of December should be excluded.

We do not agree with this contention. It seems to us the loss occurred when the City National Bank failed to open on Monday morning, December 22d, or, at the earliest, when the resolution was adopted after midnight of the 21st. The real question, therefore, is whether the notice of cancellation, served on Saturday, December 6th, became effective at midnight on Sunday, the 21st, or not until midnight on Monday, the 22d.

Our act of June 20, 1883, P. L. 136, regulating the computation of time under statutes, rules, orders and decrees of court, and under the charters and by-laws of corporations, does not apply here; but, as stated in Gregg's Estate, supra, the act is merely declaratory of the long established rule that in computing the period of time within which an act is to be done the first day of a designated period shall be excluded and the last included, and whenever the last day falls on Sunday, or a legal holiday, it shall be omitted from the computation.

As to contracts, the general rule seems to be that, except where the act is one which may be performed on Sunday, if the time agreed upon for the exercise of rights, or the performance of an act, falls on Sunday, they may be exercised or the act performed on the following day. C. J. 62 p. 1002, §52.

For the reasons stated, such cases as Edmundson v. Wragg, 104 Pa. 500, (involving the computation of the period of six months within which an action must be commenced for the recovery of usurious interest), Ehrhart v. Esbenshade, 233 Pa. 18, 81 A. 814, (in which the last day for the replevying of goods levied on under a distress for rent fell on Sunday and it was held that no appraisement could lawfully be made until Tuesday), Herr v. Moss Cigar Company, et al., 237 Pa. 232, 85 A. 151, (relating to the filing of a stipulation against mechanics' liens), and Mulligan v. E. Keeler Co., 112 Pa. Superior Ct. 261, 170 A. 311, (involving the giving of notice under the workmen's compensation act of the occurrence of a hernia), are of no assistance. The rights of the parties in this case arise under, and are governed by, the terms of their contract.

The court below declined to apply the general rule because "no act was required to be done by either party on [Sunday] December 21, 1930, and, therefore, the

reason for the rule extending the time of performance does not exist."

It is true that the contract contained no express provision for the performance of any particular act on December 21st; by its terms the insurer agreed to furnish protection against loss until midnight of July 3, 1931, subject to its reserved right to cancel at any time upon the prescribed notice. The correctness of the conclusion below turns upon the purpose and construction of the cancellation clause.

A close analogy exists between the cancellation clause here involved and the usual five days' cancellation clause in fire insurance policies. Diligent search has failed to disclose any appellate decision in which the question of the inclusion or exclusion of a Sunday at the end of the five days' period has been adjudicated.

The cases, however, do indicate a distinction between the effect of the ending of the full term of a contract of insurance upon a Sunday, or a holiday, and the expiration of a notice of cancellation upon such a day. Cases may also be found relating to the computation of periods of grace for the payment of premiums or assessments, and to privileges of extension or renewal, and other similar provisions in insurance contracts.

For instance, in Upton v. Travelers' Insurance Co., 178 Pac. 851, (Supreme Court of California), 2 A. L. R. 1597, the contract involved was one of accident insurance; the original term was six months, with an option to renew. It had been renewed from time to time; the last renewal was made on April 12, 1914, and expired October 12th, which was a legal holiday. The accident for which recovery was sought occurred on October 13th. Under statutory provisions similar to our Act of 1883, and applying there to contracts as well as statutes, decrees, etc., it was held there could be no recovery because the accident was, of course, not an act provided by the contract of insurance to be per-

formed on a particular day. With regard to the option to renew, it was decided that the statutory rule relative to computation of time had the effect of extending the time for exercising the option for one day, but as it was not exercised the policy terminated at noon of the holiday. It was said, "The only thing extended by the statute [was] the time for exercising the option, not the time of insurance against the happening of an accident."

The following cases illustrate the distinction between the expiration of the full term of insurance on Sunday, or a holiday, and the right to defer payment of premiums falling due on such days: Holbrook Bros. v. Mill Owners' Mutual Insurance Company, 86 Iowa 255, and Aetna Life Insurance Co. v. Wimberly, 112 S. W. 1038, (Supreme Court of Texas), 23 L. R. A. 759, (New Series).

When the original term for which a policy of insurance is written ends on a Sunday, the parties have mutually agreed that protection shall cease upon a day during which ordinary business cannot be transacted; hence the reasonableness of the rule that the insurer is not liable for a loss occurring upon the day following.

We are not convinced, however, that this rule is applicable to the situation arising under the facts in this case. Here, the trust company had no part in selecting a Sunday as the date upon which the notice of cancellation would become effective. All it had agreed to was that the insurer might cancel upon fifteen days' notice. The selection of the date of cancellation was entirely at the option of the insurer. The latter elected to fix the time for cancellation as midnight of Sunday, December 21st.

The general rule that when the last day of a period within which an act is to be performed falls on Sunday it may be performed on Monday, applies also when the date upon which a right or privilege may be exercised

falls on Sunday. In Troopin v. Cohen, 85 Pa. Superior Ct. 1, it was agreed by the parties to a written contract relative to the sale of real estate, under which an original deposit of $300 had been made, that the time for settlement could be extended thirty additional days from the 29th day of January, 1922, upon the payment on that date of an additional $200 deposit. The date specified fell on a Sunday and the additional deposit was tendered on Monday. It was held that the tender was made in time.

There is little, if any, substantial difference between an agreement for the performance of some act within a specified period of time and an agreement that a right or privilege may be exercised within such period. The obvious purpose of the fifteen days' notice in this case was to afford the insured the privilege of withdrawing its deposit or obtaining a bond from a different company. It could do neither on Sunday.

Under the notice, as elected to be given by the insurer, the insured had only fourteen days within which to protect itself, unless Sunday be omitted from the computation.

The following quotation from an opinion by Lord ELLENBOROUGH, C. J., in Howard v. Smith, 1 Barn. & Ald. 528, is applicable to a situation in which a party has a limited time within which to decide whether he will avail himself of the privilege of taking appropriate action to protect his interests. The question in that case was whether Sunday should be included in the computation of the four days allowed for the surrender of a principal by his bail. In holding that Sunday should not be included, Lord ELLENBOROUGH said: "The object of the rule is that the bail should have four days allowed them to search the office that they may know whether it be necessary to render their principal or not. That being so and Sunday not being a day on which any search can be made the bail would, if

Sunday were reckoned as one of the days, only have three entire days during which they could search the office. I am therefore of opinion that the ca. sa. should have lain in the office four entire days exclusive of the Sunday; and consequently that the proceedings are irregular."

A Pennsylvania case in which the construction of a cancellation clause in a fire insurance policy was involved is Penn Plate Glass Company, etc., v. Spring Garden Insurance Company, 189 Pa. 255, 42 A. 138. The policy stipulated that the insurance under it should begin at noon and expire at noon of the days agreed upon for the beginning and the end of the term. Our Supreme Court held that such an agreement became the special rule for the fixing of the dates so specified, but that it did not apply to all computations of time under the policy. With respect to such collateral matters as the five days' notice of cancellation and the protection for five days of property removed on account of danger of fire, the general rule of excluding the first day and counting the days "as legal days beginning and ending at midnight" was applied.

In the course of the opinion it was said: "The application of such a special rule for computation might be extremely inconvenient and doubtful; as, for example, if goods had been removed in this case to save them from the fire starting at 10:30 P. M. on April 12th, what period should the five days' special protection cover? From noon of the 12th to noon of the 17th would afford the insured less actual time than he was entitled to, while from noon of the 13th to noon of the 18th would give him more. The result would be no more accurate than by the application of the general rule of excluding the first day, and counting the days as legal days, beginning and ending at midnight. This method, disregarding fractions of a day, is the general

rule, and would appear to be the better construction of the policy in suit."

The Penn Plate Glass Company case was cited and followed in Malin v. Netherlands Insurance Co., 203 Mo. App. 153, 219 S. W. 143. Notice of cancellation of a tornado insurance policy, running for five years and from noon to noon of fixed dates, was received by the insured at nine o'clock in the morning of May 31st and his silo was destroyed at two o'clock on the afternoon of June 5th. The controversy was whether the notice of cancellation expired at noon or at midnight of the 5th. In holding that the protective period had not expired at the time the silo was destroyed the court said: "It is true the ordinary counting of time by excluding the first day *is* not the rule where the contract itself manifests a different intention. But this particular portion of the contract as to cancellation does not manifest an intention different from the ordinary rule. Penn Plate Glass Co. v. Insurance Co., 189 Pa. 255, 42 Atl. 138, 69 Am. St. Rep. 810. It reads that protection 'shall continue five days from the receipt of such notice' of cancellation."

In Bohles v. Prudential Insurance Co. of America, 86 Atl. 438, (Court of Errors and Appeals of New Jersey) the policy was one of life insurance and contained a provision that "a grace of one month will be allowed" for the payment of premiums. It was held that the word "month," as so used, meant a calendar month and that as the premium in question was due June 30th, the month of July was the period of grace to which the insured was entitled; and that as July 31st was Sunday, and the company afforded no opportunity to pay on that day, the insured was entitled to pay the premium on the first day thereafter upon which business could be lawfully transacted. A paragraph from the opinion reads:

"So to hold is to put this case in accord with the great weight of authority (Serrell v. Rothstein, 49 N.

J. Eq. 385, 24 Atl. 369), and is consistent with the well-settled rule that, so far as fair construction of the language used will permit, the conditions and provisions of a policy with reference to forfeiture should be strictly construed in favor of the insured and against the company (State Insurance Co. v. Maackens, 38 N. J. Law, 564)." See also Penn Plate Glass Company v. Spring Garden Insurance Co., supra; Scheel v. German-American Insurance Co., 228 Pa. 44, 76 A. 507; and O'Neil v. American Assurance Co., 52 Pa. Superior Ct. 577.

In the light of these decisions and for the reasons indicated, we are of opinion that the liability of the defendant bonding company had not terminated when the loss against which it insured Franklin Trust Company occurred. In other words, the notice of cancellation did not become effective until midnight of Monday, December 22, 1930.

As the City National Bank did not open for business on the morning of that day, a demand by the trust company for its deposit therein would have been merely a futile gesture and failure to perform such a useless act does not affect defendant's liability.

Judgment reversed and record remitted to the end that judgment may be entered for the plaintiff in the amount agreed upon in the case stated.