Breen, Appellant, v. Rhode Island Insurance Company, Appellant, et al.

Argued April 10, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

218

*Henry Panfil,* with him *James E. Gallen* and *Moore, Gossling & Panfil,* for plaintiff.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for Rhode Island Ins. Co., defendant.

OPINION BY MR. JUSTICE PATTERSON, May 21, 1945:

This is an action in assumpsit by James J. Breen against Rhode Island Insurance Company and Land Title Bank and Trust Company based upon an agreement between Breen and the Rhode Island Insurance Company for the sale of 3800 shares of William Penn Fire Insurance Company stock, and a further agreement whereby $12,000 was placed in the hands of the Land Title Bank and Trust Company to protect the insurance company, purchaser, from any loss that might occur due to a variation of the figures in the agreement and to liabilities not provided for therein and in matters which might appear to be claims against the William Penn Fire Insurance Company up to and including June 30, 1941. The case was tried before a judge without a jury. Breen and the Rhode Island Insurance Company have taken separate appeals from the decree of the court below.

On July 3, 1941, Breen and Rhode Island Insurance Company entered into a valid agreement for the sale to Rhode Island Insurance Company of 3800 shares of the William Penn Fire Insurance Company. Settlement

took place on July 23, 1941, as provided in the contract. Thereupon Rhode Island Company took over the operation and management of the William Penn Fire Insurance Company. Concurrent with the settlement and pursuant to a provision in the agreement of sale what is termed by the parties as an "escrow agreement" was executed. By the terms of this latter agreement Breen delivered to the Land Title Bank and Trust Company $12,000 to be held by it to secure the Rhode Island Insurance Company from loss and damage that might occur due to any variation of the amounts in the figures set forth in the said agreement and any liabilities not therein provided for or any claims against the William Penn Fire Insurance Company up to and including June 30, 1941. The agreement set up certain reserves, as follows: "Amount due insurance companies $1,514.86; Sundry accounts payable $250.50; Reserve for Fire Patrol $250.00; Pennsylvania Premium tax $250.00; Unemployment Compensation and Social security tax due June 30, 1941, $175.00; Corporate stock tax, net, $122.00; Reserve for pending fire losses unadjusted as of June 30, 1941, $2,210.00; and reserve for Matthison-Aitken claim, $600.00." It further provided that should any of the said amounts be insufficient for the purposes set forth or should there be any matters for which reserves were not made then such additional sums were to be deducted from the monies and deposits with the Land Title Bank and Trust Company. The accounts receivable said to be good and collectible were set at $13,609. The guarantee against loss was to apply also to the accounts receivable and payable of the Penn City Insurance Agency, a company wholly owned by the William Penn. Paragraph 7 provided that at the expiration of four months from the date of the agreement the respective parties should inform the Land Title Bank and Trust Company of any sums to be deducted and any credits to be given, and thereupon the balance of the fund should

be returned to Breen. It further provided: "In the event that the parties of the first and second part shall not within said period of four months indicate to the stakeholder in writing the deductions as aforesaid then on the expiration of said four months the stakeholder is authorized and directed to return the entire fund to the party of the first part, unless prior to such return the party of the second part shall serve written notice upon the stakeholder of a claim to said fund or any part thereof arising out of the matter set forth in paragraph three herein." Provision was made for the arbitration of any disputed items but this was never done.

November 23 fell on a Sunday, and on November 24, John W. Brock, trust officer of the Land Title, called the office of the Rhode Island on the telephone regarding the propriety of turning over the fund to Breen. He was informed that certain items were to be deducted and requested not to make any disposition of the fund at that time. On the same day Robert C. Weigel, vice president of Rhode Island, prepared a letter setting forth the amounts to be deducted, all of which totaled $2811.86. In addition thereto, there were three outstanding legal claims against the William Penn. This letter was delivered on the same day to Harold Strange, an employee of the Land Title, to be given to Brock. Brock testified that he first saw the letter on the morning of November 25. The claims in the notice of November 24 fall into four general groups: First, accounts receivable from brokers, the guaranteed amount of which was $13,609. Rhode Island claimed $224.44 had to be charged off as uncollectible and $649.17 still uncollected; $306.86 had been paid in commissions and $214.20 remained payable. At the trial it was shown that $1235.97, less than the guaranteed amount, had been collected. Second, $377.48 was claimed for re-insurance balances charged off. Third, a deficiency in the net worth of the Penn City Insurance Agency, Inc., of $861.70, with uncollected

balances of $178.01, or a total of $1039.71. This claim was $1039.71, less than the $1850 net worth of the Penn City agreed upon in the agreement. Fourth, the legal actions against the William Penn. These were (1) an action by Mathison-Aitken Company for. which a reserve of $600 had been provided. Final disposition of this case required an additional expenditure of $116.05. (2) Henry S. McCaffrey, for which no reserve had been made but settlement of which required $253.28, and (3) an action by Philip and Rose Gross for which no reserve had been provided but which ultimately resulted in a verdict of $611.25.

Breen contends that notice had not been given as provided by the escrow agreement and, therefore, he was entitled to the $12,000 immediately upon the expiration of the four months. Rhode Island Insurance Company contends that it could, according to the terms of the agreement, submit claims for deductions at any time prior to the distribution of the fund. The court below concluded that notice had been properly given and that Rhode Island was limited in its claim for deductions to those set forth in its notice to the Land Title.

In construing the terms of a contract attempt must be made to give effect to all the provisions. An interpretation is favored which will effect the purpose for which the agreement was made. That purpose, as gathered from the words used, would be considered a reasonable one inuring to the mutual benefit of the parties. The court below properly held that the time within which notice was required to be given was controlled by the general rule that "when the last day of a period within which an act is to be performed falls on Sunday it may be performed on Monday, [this] applies also when the date upon which a right or privilege may be exercised falls on Sunday": *Gordon v. Home Indemnity Company,* 121 Pa. Superior Ct. 241, 247. The intention to give Rhode Island a full four months within which to

assert a claim against the fund is evident from the "escrow agreement" and circumstances surrounding the entire transaction.

The provision in the agreement for a time when this notice was required to be given could not have been intended solely for the guidance of the Land Title and without meaning between the parties. To so hold would give to Rhode Island the power to prolong indefinitely a settlement of accounts. Clearly this was never intended. The intention must have been to provide a period of four months within which Rhode Island was to ascertain all claims for deduction and within that time present the same to the security holder. The court below properly limited the claims for deduction to those set forth in the notice of November 24, and others for which provision was made in the agreements.

Having disposed of the fundamental issue regarding the proper notice, Breen's claim for compensatory damages is without merit.

Judgment appealed from is affirmed.