FRANKLIN LIFE INSURANCE COMPANY, Plaintiff-Appellant,

v.

Mary E. BIENIEK and Sewickley Savings & Loan Association, Defendant-Appellees.

No. 13899.

United States Court of Appeals Third Circuit.

Argued Oct. 5, 1962.

Decided Dec. 27, 1962.

Rehearing Denied Feb. 20, 1963.

Gilbert J. Helwig, Pittsburgh, Pa. (Robert W. Scrivner, Reed Smith Shaw & McClay, Pittsburgh, Pa., on the brief), for plaintiff-appellant.

Wilbur F. Galbraith, Pittsburgh, Pa. (John F. Roney, Washington, Pa., on the brief), for appellee Mary E. Bieniek.

Thomas W. Neely, Jr., Pittsburgh, Pa., for appellee Sewickley Savings & Loan Ass'n.

Before STALEY and FORMAN, Circuit Judges, and LANE, District Judge.

FORMAN, Circuit Judge.

Franklin Life Insurance Company of Illinois (Company) was the plaintiff in an action in the United States District Court for the Western District of Pennsylvania against Mary E. Bieniek and Sewickley Savings & Loan Association (Sewickley), both of Pennsylvania, for a judgment declaring a policy of insurance issued by it on the life of the husband of Mrs. Bieniek, the late Brownie J. Bieniek, to be null and void. After a hearing without a jury, judgment was entered dismissing the complaint of the Company and this appeal followed. Jurisdictional diversity and amount are present.

The background of the litigation is as follows: In early 1958 Sewickley granted the Bienieks a mortgage loan of $15,000 in connection with the purchase of a home. On March 13, 1958 Mr. Bieniek applied to the Company for a twenty year reducing term policy in an amount sufficient to provide for monthly payments of $80.17, intending that the insurance would secure the repayment of the mortgage loan in the event of his death. As part of the application he answered certain questions concerning his prior medical history and state of health, which were recorded and certified by him in the application. On March 13, 1958 Mr. Bieniek was examined by the Company's physician, Dr. P. M. Haver, who reported his findings to the Company stating that he considered him to be in good health. On March 21, 1958 the Company executed a policy of insurance, which was delivered to Sewickley as assignee, in accordance with Mr. Bieniek's instructions and a certificate as to the issuance and delivery of the policy was sent to him.

On May 4, 1959 Mr. Bieniek died. On June 3, 1959 the Company notified Mrs. Bieniek that it would not honor the policy because of material, false representations knowingly made by Mr. Bieniek in his application and at the same time tendered a return of the premiums paid. The Company filed its suit on March 14, 1960.

In its opinion, reported at 199 F.Supp. 838 (1961), the District Court concluded that the statements of Mr. Bieniek were "plainly (1) false (2) material and (3) made with knowledge of their falsity on the part of the insured." Nevertheless it held that answers to two questions [1] were so clearly erroneous in nature that the Company was put on notice that it should have made further inquiry failing which it waived the misrepresentations in the application.

The District Court also alluded to the question of whether the Company had contested the payment of the policy within the time limit of the incontestability clause therein, but did not pass upon the point.[2]

■ It seems orderly to resolve this issue first. Preliminarily it should be determined whether the letter of June 3, 1959 with the accompanying refund of premiums is sufficient notice of a contest.

■ That the policy was delivered in the State of Pennsylvania, the place of residence of the insured, is unquestioned.

1. See questions and answers 22 and 24 in notes 13 and 14 infra.

2. The policy provided that "after two years from date of issue this policy shall be incontestable" except for failure to pay premiums.

Therefore Pennsylvania law governs its interpretation. New York Life Ins. Co. v. Levine, 138 F.2d 286 (3 Cir., 1943).

In Feierman v. Eureka Life Ins. Co., 279 Pa. 507, 124 A. 171, 32 A.L.R. 646 (1924), in a dictum, actual suit was not considered necessary to convey the insurer's intent to contest the policy. The court said:

"The great weight of authority supports the position that the insurer must at least disavow liability within the contestable period to be relieved—not necessarily by legal action, but some definite step, specifying the ground of complaint, in such form as to effect a cancellation of the contract." 279 Pa. at 508–509, 124 A. at 171, 32 A.L.R. 646.

Later, a Pennsylvania Superior Court, consistent with the majority of jurisdictions, held that notification by letter is insufficient and that a suit must be commenced or an answer interposed. In Prudential Ins. Co. v. Ptohides, 122 Pa. Super. 469, 186 A. 386 (1936), it was said:

"The next inquiry is whether the only legally effective way in which an insurer may 'contest' its liability under a policy is by offensive or defensive proceedings in a court. In other words, is the contest contemplated by the clause a contest in court, either by the institution, within the time limited, of appropriate proceedings for the surrender and cancellation of the policy, or by making a defense to a suit brought within the period upon the policy?

"In so far as we are informed, this question has not been squarely ruled upon by either of our appellate courts, but we think the rule established in New York and many other jurisdictions—that appropriate proceedings in a court are essential to a valid contest by the insurer—should

be adopted here." 122 Pa.Super. at 474–475, 186 A. at 388.

The court quoted copiously from Killian et al. v. Metropolitan Life Insurance Company, 251 N.Y. 44, 166 N.E. 798, 64 A.L.R. 956 (1929) including the conclusion of Justice Cardozo that:

"'* * * For present purposes it is enough to say that a contest begins when the contestants, satisfied no longer with minatory gestures, are at grips with each other in the arena of the fight. When the fight is a civil controversy, the arena is the court.'"[3] 122 Pa.Super. at 478, 186 A. at 389.

In 1940, in Ulakovic v. Metropolitan Life Insurance Co., 339 Pa. 571, 16 A.2d 41, the Pennsylvania Supreme Court noted the foregoing cases of Feierman v. Eureka Life Ins. Co., supra, Prudential Ins. Co. v. Ptohides, supra, and Killian v. Metropolitan Life Ins. Co., supra, but found it unnecessary to discuss them since it decided the case before it on another point.

In 1948, in New York Life Ins. Co. v. Del Bianco, 161 Pa.Super. 566, 568, 56 A. 2d 319, the ruling in Prudential v. Ptohides, supra, adopting the language in Killian v. Metropolitan Life Ins. Co., was specifically approved.

The direction pointed by the Pennsylvania Superior Court and the weight of authority in other jurisdictions lead to the conclusion that the letter of the Company of June 3, 1959 does not constitute notice of the contest, but that occurred only with the filing of the suit on March 14, 1960.

■ It next becomes necessary to ascertain the "date of issue" of this policy. Was it on March 13, 1958, as indicated in the policy or was it on March 21, 1958, when the policy was executed by the Company?

---

3. Mut. Life Ins. Co. of N. Y. v. Bamford, 132 Pa.Super. 255, 200 A. 907 (1938) and Carpentieri v. Metropolitan Life Insur-

ance Co., 138 Pa.Super. 1, 10 A.2d 37, (1939) are in accord.

The policy itself does not define the "date of issue" as such. At its heading it contains the words:

"First Policy Year Begins March 13, 1958

Expiry Date March 13, 1978."

The Company's undertaking is to pay a monthly income of $80.17

"to the beneficiary upon receipt of due proof of the death of the Insured if such death occurs while this Policy is in force and prior to the Expiry Date set forth above. The monthly income shall commence on the date of the death of the Insured and shall terminate with the last payment due prior to said Expiry Date."

The first premium was payable on the beginning of the first policy year, March 13, 1958, and subsequent premiums were payable on the anniversary of said date in every year thereafter. The grace period of thirty-one days ran from the due date of all premiums after the first. Upon examination any apparent ambiguity in the "date of issue" of the policy diminishes rapidly. Obviously it was the intent of the parties that the effective date of the policy should be March 13, 1958, the date that the "First Policy Year Begins", as recited in the policy. To regard March 21, 1958, the date upon which the policy was formally signed by the Company, as the "date of issue" would impart an artificiality to the acts of the parties that they never intended. Lloyd v. Franklin Life Insurance Co., 245 F.2d 896 (9 Cir., 1957).

■ This brings us to the final question under this issue: When did the two year period of the incontestability clause expire, on March 12th or March 13th, 1958?

The Company contends that it does not matter which date governs because those two days are respectively Saturday and Sunday and are excluded from the computation of the two years. It asserts that under the Pennsylvania law, Act of May 17, 1921, P.L. 682, as amended, 40 P. S. § 510(c), policies issued or delivered in Pennsylvania are required to contain a two year incontestability clause.[4] It then refers to the Pennsylvania computation of time statute, 46 P.S. § 538, which provides:

"When any period of time is referred to in any law, such period in all cases, * * * shall be so computed as to exclude the first and include the last day of such period. Whenever the last day of any such period shall fall on Saturday or Sunday, * * * such day shall be omitted from the computation." As amended 1959, Aug. 11, P.L. 691, § 1.[5]

The Company contends that it is clear that since a period of time is referred to in the insurance law (40 P.S. § 510(c)) it is subject to the computation of time rule enunciated in 46 P.S. § 538. It urges that the provision of the insurance policy incorporating the requirement must also be subject to the same rule.[6]

■ The argument fails when it is considered that 46 P.S. § 538 is a general

4. The act provides:
    "No policy of life or endowment insurance, * * * shall hereafter be delivered in this Commonwealth unless it contains, in substance, the following provisions or provisions which, in the opinion of the Insurance Commissioner, are more favorable to the policy holder:
    *      *      *      *      *      *
    "(c) A provision that the policy shall be incontestable after it has been in force, during the lifetime of the insured, two years from its date of issue, except for nonpayment of premiums; * * *."
    40 P.S. § 510(c).

5. It is to be noted that this amendment which added Saturday to Sunday as an excludable day became law August 11, 1959 after the date of this policy and after the death of the insured. The effect of its retroactiveness, if any, need not be discussed in the light of our holding herein.

6. The Company cites Tellip v. Home Life Ins. Co., 152 Pa.Super. 147, 31 A.2d 364 (1943) as authority for such reasoning, but that case refers to the principle of construction adopted in Pennsylvania cases as being given statutory statement in 46 P.S. § 538 (Act of May 28, 1937,

statute providing for a uniform computation of time periods in "any law", i. e. any statute, and does not have reference to a contract provision or clause. In Gordon v. Home Indem. Co., 121 Pa. Super. 241, 245, 183 A. 427, 429 (1936), where an insurance contract was being construed, it was held:

> "Our act of June 20, 1883, P.L. 136 [predecessor of 46 P.S. § 538], regulating the computation of time under statutes, rules, orders, and decrees of court, and under the charters and by-laws of corporations, does not apply here; but, as stated in Gregg's Estate, supra, the act is merely declaratory of the long-established rule that in computing the period of time within which an act is to be done, the first day of a designated period shall be excluded and the last included, and, whenever the last day falls on Sunday, or a legal holiday, it shall be omitted from the computation.

> "As to contracts, the general rule seems to be that, except where the act is one which may be performed on Sunday, if the time agreed upon for the exercise of rights, or the performance of an act, falls on Sunday, they may be exercised or the act performed on the following day. C.J. 62, p. 1002, § 52."

As we read that case, it holds that the rule of law in Pennsylvania is that if Sunday is the last day of a contract time period it is excluded in the computation of time in which an act must be done. See also Breen v. Rhode Island Ins. Co., 352 Pa. 217, 221, 42 A.2d 556 (1945).

But it is contended on behalf of Mrs. Bieniek that it was provided that the policy began on March 13, 1958 and that it became payable, if death occurred prior to the expiry date, March 13, 1978, or in effect that the policy year ran from March 13 to March 12th.

Support for the argument is sought from Travelers Insurance Co. v. Leonard,

120 N.J.Eq. 6, 7, 183 A. 686 (Ch. 1936) which is said to be directly in point. There an incontestability clause was in issue reading " * * * this contract shall be incontestable after it shall have been in force for a period of two years from its date of issue * * *." The policy was dated and issued August 25, 1933. The insured died July 29, 1935. The complainant filed its bill on August 26, 1935 the preceding day (August 25, 1935) having been a Sunday. The Court of Chancery of New Jersey concluded that the date of issue of the policy should be included in computing the two year period and dismissed the complaint for cancellation of the policy. But in Metropolitan Life Insurance Co. v. Lodzinski, 122 N.J.Eq. 404, 406, 194 A. 79, 80 (1937) the Court of Errors and Appeals of New Jersey considered another decision wherein the Court of Chancery, in reliance on its decision in Travelers Insurance Co. v. Leonard, supra, held that a complaint filed on February 21, 1935 by Metropolitan to cancel a policy, the date of issue of which was February 21, 1933, was too late. The decision was reversed by the Court of Errors and Appeals, which said:

> "In the case of Travelers' Ins. Co. v. Leonard, supra, the general rule for calculating the running of time was rejected in construing a somewhat similar incontestable clause in an insurance policy. It was thought that the word 'from' in such contracts denotes the commencement of a period of time and was intended to be used as a word of exclusion. Therefore, following the rule of construing contracts of insurance most strongly against the insurer the word 'from' was construed as a word of exclusion. We think following that rule in this case was error, since in computing time the method generally adopted and followed for years in our courts has become a rule of law. Hence, the two-year period of incontestability did not expire until

P.L. 1019, § 38). It holds that "[t]he language of the policy must be construed

in accordance with these *principles*." (Emphasis supplied.)

midnight of the 21st of February, 1935. The Supreme Court of the United States seems to be in accord with this view." [Citing Mutual Life Insurance Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 91, 68 L.Ed. 235 (1923)].

██ Counsel for Mrs. Bieniek also points to the suicide clause in the policy wherein the words "if within two years" are used and suggests that if suicide occurred on March 13, 1960 recovery could be had because the suicide would not be within two years. It is urged that the words "after two years" occurring in the incontestability clause must be construed consistently with the language of the suicide clause and other terminology of the policy. Therefore it is claimed that the time for the Company to cancel the policy must be held to have expired on March 12, 1960.

However, as argued by the Company, the suicide and incontestability clauses of a policy are distinct in purpose and results. A defense under the suicide clause does not contest the validity of the policy but asserts that by its terms the insurer is not bound to pay where death is caused by suicide. The incontestability clause is intended to make certain the enforcibility of the promise as set out in the policy. Perilstein v. Prudential Ins. Co., 345 Pa. 604, 29 A.2d 487 (1943); 3 Williston, Contracts (rev. ed. 1936) Sec. 811, p. 2280. The suicide clause relates to the risks covered by the policy and no act is required by either insured or insurer and there is no reason for extending the period as for instance when the last day falls on a Sunday. Therefore the time period in connection with it may be computed in the same manner as the terms of the policy. On the other hand an act must be performed—namely the contest must be instituted—in order to implement a defense under the incontestability clause. In this regard it is held to partake of the nature of a statute of limitations. New York Life Ins. Co. v. Del Bianco, supra. Computations thereunder, as has been seen, exclude the first day of the period and include the last. A distinction in the construction of time clauses in the same insurance policy is justified in Penn Plate Glass Co. v. Spring Garden Insurance Co., 189 Pa. 255, 42 A. 138 (1899). See also cases cited in Gordon v. Home Indemnity, supra, 121 Pa.Super. at 249–250, 183 A. at 431.

██ We conclude, therefore, that the expiration of the incontestability clause in this policy occurred on Sunday, March 13, 1960 and the suit of the Company, on Monday, March 14, 1960, was timely. The well settled rule that the insurance contract must be construed strictly against the insurer cannot overcome the long established regulations concerning the computation of time periods as has been demonstrated.

██ Having concluded that the "contest" was timely, we are now faced with the question of whether the Company waived its right to assert the insured's alleged fraud.

The Company urges that the defendants waived their right to raise this argument because it was never pleaded. It argues that it is an affirmative defense under Fed.R.Civ.P. 8(c) [7] and not having been pleaded it is waived, Fed.R.Civ.P. 12(h).[8] The record does not disclose that the Company raised this argument

---

7. Federal Rule of Civil Procedure 8(c) reads in part:
   "(c) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, * * * waiver, and any other matter constituting an avoidance or affirmative defense. * * *"

8. Federal Rule of Civil Procedure 12(h) provides in part:
   "(h) Waiver of Defenses. A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply, except * * *."

below. Therefore, ordinarily, it would be precluded here. But, looking to the merits of the argument, the answer of Mrs. Bieniek to the complaint [9] would appear to have apprised the Company that she would contend there was a waiver. Furthermore, Mrs. Bieniek gave notice that she would rely on estoppel and waiver in her pretrial statement, filed August 3, 1961.[10] The District Court treated the issue as joined and made it the basis of its disposition of the case. Under the liberality with which pleadings are to be viewed, absent prejudice, even the failure of formal amendment would not affect the trial of the issue. Fed. R.Civ.P. 15(b).[11] See United States v. Hougham, 364 U.S. 310, 316, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960).

■ The District Court found that the insured made statements in the application which were plainly false and material, with knowledge of their falsity in answer to questions 7, 9, 16 and 18.[12]

Contrary to the answers, the Trial Court found that the insured had consulted a "highly reputable heart specialist", Dr. John Hibbs, as early as 1954 and was treated by him through 1957. The doctor testified that the insured had pains in the chest, that during the period in question electro-cardiograms had been taken, that the insured suffered from arteriosclerotic heart disease, coronary occlusion and that he was hospitalized in 1954 for this condition.

Question 22 [13] asked whether applicant had consulted any physician not included in other questions within five years and

9. The complaint includes the following:
   "6. In issuing its said policy of insurance the plaintiff relied upon said answers.
   "7. If the plaintiff had known the applicant's actual medical history and the true conditions of his health, it would not have issued its said policy of insurance on his life."
   The Answer asserts:
   "7. The defendant further alleges that she believes and avers that the plaintiff insurance company either knew or waived the condition of the said Brownie J. Bieniek, if in fact such condition existed, which is denied, therefore proof of same is demanded at the trial of this case."

10. The pretrial statement contained the following:
    "The course of conduct of the plaintiff company constituted an Estoppel and Waiver to any of the alleged statements as to health."

11. Federal Rule of Civil Procedure 15(b) provides:
    "(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend

does not affect the result of the trial of these issues. * * *"

12. Questions 7, 9, 16 and 18 and the answers thereto are as follows:
    "7. When did you last consult a physician or surgeon and for what?
    Date _____ 1956.
    Name of Physician? J. R. Carothers
    Address of Physician? Smock, Pa.
    Illness? cold
    Duration of illness? 5–7 days
    Have you ever consulted such physician at any other time? If so, give date and details   - - -   "
    "9. Have you ever had pain in the chest, palpitation, shortness of breath, heart attack, heart murmur, high blood pressure, varicose veins, or any other disease of the heart or blood vessel? No"
    "16. Have you ever had any special examination such as X-rays, electrocardiogram, basal metabolism, blood sugar or any other blood or laboratory tests? (If so, state reason therefor with results and name and address of physician.) No"
    "18. Have you ever been under observation or treatment in any hospital, asylum or sanitarium? No"

13. Question 22 and its answer are:
    "22. Have you within 5 years consulted any physician not included in any of the above answers?"
    The answer was "Yes" written over the word "No".

in question 24 [14] particulars were requested in elaboration of question 22. The District Court found that the answer to 24 was "clearly false" for omitting to mention Dr. Hibbs. It also held as unresponsive the reference to consultation with a doctor twelve years prior to the application, concluding that:

"* * * This showed either that the insured misunderstood the question or was answering evasively. In either case we think the company was put on notice of irregularity. When it failed to make appropriate inquiry, but chose instead to rely on the medical examination made by Dr. P. M. Haver on March 13, 1958, and the agent's confidential report, and proceeded to issue the policy, it waived the matter of misrepresentations in the application. Continental American Life Ins. Co. of Wilmington, Del. v. Fritsche, 37 F.Supp. 1, 2 (E.D.Pa.1941)." Franklin Life Insurance Company v. Bieniek, supra, 199 F.Supp. at 839–840.

The Company concedes that the law of Pennsylvania is to the effect that when a policy is issued on an application containing an ambiguous, unresponsive or incomplete answer the insurer waives the right to assert the falseness or materiality of the question and answer. The Company, however, urges that the District Court erred when it imposed a duty of inquiry upon it and held that its failure to inquire rendered it bound by such knowledge as it would have discovered.

The District Court supported its decision with Continental American Life Ins. Co. of Wilmington, Del. v. Fritsche, 37 F.Supp. 1 (E.D.Pa.1941). That case came up on a motion to dismiss by reason of the failure to state a claim. It was contended by the plaintiff that the answers of the insured to questions in the application were incomplete, untrue and that if they had been truthful and completely answered the company would not have issued the policies. One of the questions was "5. Give name and address of last physician you consulted, date, duration and diagnosis of the illness." The answer was: "Yes. Dr. Taubel." The court said of this:

"* * * This answer was vague, indefinite and incomplete on its face. It failed to disclose the date, duration and diagnosis of the illness. But I think the plaintiff cannot complain of this answer since, when an answer is unresponsive or manifestly incomplete, the insurer, in acting thereon, precludes itself from later objecting. Armenia Ins. Co. v. Paul, 91 Pa. 520, 36 Am.Rep. 676; Lebanon Mut. Ins. Co. v. Kepler, 106 Pa. 28; Meyers v. Lebanon Mut. Ins. Co., 156 Pa. 420, 27 A. 39; Horne v. John Hancock M. L. I. Co., 53 Pa. Super. 330." 37 F.Supp. at 2.

However, as to other questions and answers the court held that the complaint "set forth respects in which the insured's answers were incorrect, materially incomplete, and misleading," and therefore denied the motion.[15]

14. Question 24 and its answer are:
"24. In regard to those answered 'Yes' above, give full particulars."

| Question No. | Disease or Injury | No. of Attacks | Date | Duration | Severity | Name and Address of Physician |
|---|---|---|---|---|---|---|
| 22 | *Amputating distal joint Rt index Finger* | | *1946* | | | *Dr. Robinson Uniontown, Pa.*" |

(The words and figures are emphasized to indicate handwritten answers.)

15. Somewhat similar rulings are found in Johnson v. State Farm Life Ins. Co., 176 F.2d 83, 84–85 (10 Cir., 1949) and Martin v. Metropolitan Life Ins. Co., 192 F.2d 167, 171 (5 Cir., 1951).

The appellees assert that directly in line with the decision of the District Court in this case and with Fritsche is Love v. Metropolitan Life Ins. Co., 99 F. Supp. 641 (E.D.Pa.1951). In that case a jury had rendered a verdict in favor of the company where it had defended its refusal to pay the proceeds of a life insurance policy because the insured made false statements in his application, fraudulently inducing the company to issue the policy. On a motion for judgment n. o. v. or for a new trial, the court granted a new trial on the ground that the interrogatories posed to the jury did not adequately present the case. In the course of its opinion the court commented:

" * * * In reply to questions, the insured stated that he had had a stone removed from his left ureter, and an appendectomy. Then, under the direction to state the 'name and address of every physician consulted', the names of two hospitals were listed, without naming any physicians. In answer to a subsequent question asking what hospitals or physicians, not named in the prior answers, he had consulted or been treated by within the past five years, he answered, 'None'. Inasmuch as no doctors at all were named, in response to specific questions directed at determining their names, it is a permissible inference that the answers were ambiguous, requiring the defendant to make further inquiry, and precluding reliance on the answers as given. Cf., Phoenix Mutual Life Ins. Co. v. Raddin, 120 U.S. 183, 7 S.Ct. 500, 30 L.Ed. 644; Lebanon Ins. Co. v. Kepler, 106 Pa. 28; Meyers v. Lebanon Mutual Ins. Co., 156 Pa. 420, 27 A. 39; and see Walter v. John Hancock Mutual Life Ins. Co., 160 Pa.Super. 532, 535, 52 A.2d 366. For if the defendant had required the names of the doctors, it might have been able to learn of the insured's condition from his family physician, who attended him at the hospitals. If the ambiguity of the answers was such that a reasonably prudent insurer would have undertaken a further inquiry which would have led to a disclosure of the true facts, and none was undertaken, then it is entirely equitable to find the insurer estopped from reliance on the answers given. The defendant in such a case, should have known the true facts and cannot be now heard to claim reliance on any misrepresentations." 99 F. Supp. at 644.

However, as we have seen, Fritsche is not in line with the decision of the District Court herein nor with Love for it held that the issuance of a policy where a question was answered unresponsively merely precluded the insurer from later objecting to the unresponsive answer. It is to be noted that the court denied the motion to dismiss when other complete answers were alleged to be false. In our case and in Love it was held that the acceptance of the unresponsive answer charged the Company with the duty of inquiry, and absent such inquiry, with knowledge of what it would have discovered had it been made, so that the waiver of the Company was extended to all other answers including those complete but false.

While the decision of the District Court is in line with Love the latter is founded upon cases which do not support it. Those cited in the foregoing quotation confine themselves to the proposition that where an answer in an application is ambiguous, unresponsive or incomplete the insurer by issuing the policy has done no more than to estop itself from objecting to the materiality of the ambiguous, unresponsive or incomplete answer. They do not stand for a doctrine of constructive knowledge, as expressed in Love and by the District Court in this case.

That the issuance of a policy in the face of an incomplete or imperfect answer in the application constitutes only a waiver of the requirement of a full

and complete answer is attested by the treatise writers.

7 Couch, Insurance 2d, § 35.261, p. 285 (Anderson 2d ed. 1961) reads:

"When information supplied by the insurer is obviously not satisfactory or adequate, the acceptance thereof by the insurer without a protest is a waiver of the requirement of a complete or full answer. Thus, the issuance of a policy upon an incomplete application constitutes a waiver of the unanswered queries. [Citing Bowles v. Mutual Ben. Health & Accident Ass'n, 99 F.2d 44 (4 Cir. 1938)]. When an application for a policy of insurance discloses upon its face that a question is incompletely or imperfectly answered, or is not answered, the acceptance of the application constitutes a waiver of the incompleteness or imperfection of the answer, or the failure to answer at all, and renders such condition of the application immaterial." Citing Johnson v. State Farm Life Ins. Co., 176 F.2d 83 (10 Cir., 1949).

To the same effect see 16 Appleman, Insurance Law and Practice, § 9252, p. 803–805.

In this case the District Court ruled that the irregularity of the answer to question 24 in the application placed the Company on notice so that it should have made inquiry instead of relying upon the result of the examination of its medical examiner and the confidential report of its agent. Such inquiry, the court found doubtless would have disclosed the data upon which it relied to cancel the policy. The issuance of the policy without making such inquiry was determined to be a waiver not only of the materiality of the unresponsive answer but of all the "misrepresentations in the application".

At most, the Company had the duty to request a clarification of the imperfect answer in the absence of which it must be taken to have waived the materiality thereof. We think it is error to hold that the Company waived all of the misrepresentations in the application. Only if the Company was in possession of information warning it of the falsity of the answers in the application would the duty devolve upon it to make independent inquiry or be held bound by the knowledge such inquiry would have disclosed. Columbian Nat. Life Ins. Co. v. Rodgers, 116 F.2d 705, 707 (10 Cir., 1940) held that an insurance company having "[K]nowledge which is sufficient to lead a prudent person to inquire about the matter, when it could have been ascertained conveniently, constitutes notice of whatever the inquiry would have disclosed, and will be regarded as knowledge of the facts." Such a rule is accepted in Pennsylvania, Ratkovic v. Metro. Life Ins. Co., 126 Pa.Super. 492, 191 A. 201 (1937), and other jurisdictions. See, e. g., Provident Life Ins. Co. v. Hawley, 123 F.2d 479, 482 (4 Cir., 1941). But in this case no such knowledge had been brought home to the Company. Were answer to question 24 the only imperfect one the conduct of the Company in issuing the policy would certainly have estopped it from the cancellation. But, as the trial court justifiably found in this case, the insured's answers to questions 7, 9, 16 and 18 were false, material and made with knowledge of their falsity. They were in clear violation of the insured's duty to make truthful answers. Since they were not excused by reason of the waiver of the imperfect answer to question 24, the Company is entitled to rescission. Kizirian v. United Benefit L. Ins. Co., 383 Pa. 515, 119 A.2d 47 (1956).

The appellees' arguments that the Company failed to sustain its burden in proving that the insured knowingly suffered from a serious undisclosed ailment concerning which he made misrepresentations in his application, must fail in the light of the findings of the District Court which were not only free from clear error but amply substantiated.

The other contentions of the appellees were examined and likewise found to be without merit.

Hence the order of the United States District Court for the Western District of Pennsylvania of November 29, 1961 dismissing the complaint will be vacated and the case remanded for the entry of judgment in favor of the appellant, Franklin Life Insurance Company.