Caroline H. ANNETT

v.

NATIONWIDE LIFE INSURANCE COMPANY.

Civ. A. No. 74–3152.

United States District Court,
E. D. Pennsylvania.

March 12, 1976.

Joseph Gerber, Philadelphia, Pa., for plaintiff.

Edward R. Paul, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NEWCOMER, District Judge.

This action was filed by the plaintiff to recover the proceeds of a life insur-

ance policy issued by the defendant Nationwide Life Insurance Company. The Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

FINDINGS OF FACT

1. The Plaintiff, Caroline H. Annett, is the widow of William Annett and the sole beneficiary of a life insurance policy issued by the defendant and bearing policy number 01–227–235. The plaintiff is a citizen of Pennsylvania.

2. The defendant in this case is the Nationwide Life Insurance Company, a corporation existing under the laws of a state other than Pennsylvania, and having its principal place of business in Columbus, Ohio.

3. On September 14, 1972, the two-page application for the subject insurance policy was filled out by Frank Mikolichick, a licensed agent for the Nationwide Life Insurance Company. Apparently, Mr. Mikolichick recorded Mr. Annett's answers to the various questions on the application form during business hours at the laundromat operated by Mr. Annett. Mr. Annett signed the application after it was completed, certifying that "all statements and answers on page one and two of this application are complete and true to the best of my knowledge and belief and are correctly recorded as set down." However, the plaintiff testified that her husband did not read the completed application before signing it. Mr. Mikolichick also signed the application, certifying that he had "truly and accurately recorded the applicant's answers."

4. The Annetts had purchased Nationwide automobile, home, and business insurance through Mr. Mikolichick before buying the life insurance that is the subject of this suit. Mr. Mikolichick initiated discussions concerning life insurance when he told the Annetts that he thought they could get more insurance for less money from Nationwide.

5. At the time the Annetts discussed life insurance with Mr. Mikolichick, Mr.

Annett had two life insurance policies with the John Hancock Mutual Life Insurance Company. The first policy had been issued on September 8, 1967, and was for $10,000 plus $100 per month for 19 years. The second policy was for $5,600 plus $27,400 of decreasing term insurance. These policies were completely incontestable, except for non-payment of premium, in September of 1972.

6. After discussions with Mr. Mikolichick, the Annetts decided to switch to Nationwide. The Nationwide policy took effect on October 24, 1972. Thereafter, on November 24, 1972, the Annetts terminated the policies issued by the John Hancock Mutual Life Insurance Company.

7. Plaintiff's decedent, William Annett, died on July 13, 1974. All premiums on the subject life insurance policy were properly paid prior to Mr. Annett's death.

8. Subsequent to Mr. Annett's death, the plaintiff herein made full and proper application for the proceeds of the insurance policy and in all other ways complied with the procedures required by the defendant, Nationwide Life Insurance Company.

9. On August 15, 1974, Nationwide advised Mrs. Annett that it was denying any liability under the subject policy of insurance on the grounds that in conducting its post-death investigation it "found that Mr. Annett had an extensive physical history which he failed to indicate on his application for life insurance."

10. Mr. Annett had been receiving regular treatment from Dr. Frank E. McClimans for several years prior to his application for Nationwide Life Insurance. Dr. McClimans' records indicate that Mr. Annett sometimes was nervous, that his blood pressure was sometimes high and sometimes normal, that Mr. Annett had some blackout spells in 1970, and that he may have had some problems with his liver. Dr. McClimans placed Mr. Annett on a 2000 calorie diabetic diet, limited his consumption of al-

cohol, and gave him medication for his nervousness.

11. There is no evidence that Dr. McClimans told Mr. Annett that he suffered from high blood pressure, diabetes, liver disease, or any other specific ailment. Mrs. Annett testified that she sometimes accompanied her husband on visits to Dr. McClimans, and that she never heard the doctor tell her husband about any particular health problems. Mrs. Annett also testified that her husband never complained about his health.

12. In the years prior to his death Mr. Annett did various kinds of manual labor and often held more than one job. In addition to operating a laundromat, he worked as a rigger at the United States Naval Yard, filled graves at Arlington Cemetery, and did janitorial work at a school. Mr. Annett missed only about four days of work due to sickness in the five years before his death.

13. In November of 1969 Mr. Annett had fallen and was taken to Delaware County Hospital, where a brain scan was performed and diagnosed as normal.

14. The application for insurance contained a series of questions concerning the applicant's health. Question number 4 inquired "to the best of your knowledge and belief are you now in sound health?" Mr. Annett answered this question "yes."

Question number 7 asked whether within the past ten years the proposed insured had been

"advised or medically treated by a doctor for . . . (a) Disease or disorder of brain or nervous system, genito urinary tract, gall bladder, lungs, heart, blood vessels, liver, kidney, intestines, or stomach? (b) Paralysis, recurrent dizziness, fainting spells, alcoholism, narcotic addiction, drug habituation, hallucinations, high or low blood pressure? (c) Hernia, cancer, ulcer, tuberculosis, pain or discomfort in chest, diabetes, syphilis, epilepsy or goiter? . . ..

Mr. Annett answered all parts of question 7 in the negative.

Question 8(c) asked if the proposed insured had "ever been a patient or been under treatment or observation in any hospital, clinic, asylum, sanitorium or other private government facility performing similar services?" Mr. Annett answered "No."

Question 8(d) asked if the proposed insured within the past five years had "Ever had X-rays, electrocardiograms or other medical tests or studies?" Mr. Annett answered "No."

15. The answers on the insurance application to some of the questions discussed in the preceding finding of fact provided incorrect and misleading information to the Nationwide Life Insurance Company. For example, Mr. Annett had had medical tests performed, and had been advised or treated by a doctor for high blood pressure, fainting spells and probably diabetes and disease or disorder of the liver. (See Findings of Fact 10 and 13 *supra*).

16. If Nationwide had known the true state of Mr. Annett's health it would not have issued a standard risk life insurance policy to him.

17. The incorrect answers provided by Mr. Annett were material to the risk undertaken by Nationwide in issuing life insurance to him.

18. Question 8(b) on the insurance application asked if the proposed insured within the past five years had "Consulted or been treated by a doctor or other practitioner?" Mr. Annett answered "Yes" to this question, but did not provide the name of the doctor as requested in question 9.

19. Mr. Annett also answered a Nationwide Insurance Company form entitled "Medical History and Declaration." Question 4 on that form was nearly identical with question 8(b) on the insurance application, but Mr. Annett answered "No" to question 4.

20. Nationwide employed a physician to make a physical examination of Mr. Annett and employed the "Retail Credit

Company" to investigate Mr. Annett and file a "Health Report." Although the physical examination and the investigation were performed, at no time did Nationwide's employees or its agent, Mr. Mikolichick, ask Mr. Annett for the name of the physician referred to in question 8(b) of the insurance application.

21. When Mr. Annett signed the insurance application he authorized his physician to give Nationwide full information regarding his health and medical history. This authorization would have covered Dr. McClimans' records concerning Mr. Annett, which showed the true state of his health.

22. Question 13 on the insurance application asked for all other life insurance presently in force. Despite the fact that defendant's agent, Mr. Mikolichick, was aware that Mr. Annett had two policies with the John Hancock Mutual Life Insurance Company, only one policy was listed in response to question 13.

23. Although Mr. Mikolichick apparently was an employee of the defendant Nationwide Insurance Company at the time of trial and might have provided important information about how the insurance application was filled out, the defendant did not produce him as a witness.

24. Considering all the evidence, I find that Mr. Annett did not knowingly or fraudulently misrepresent material facts in applying for life insurance from the defendant.

CONCLUSIONS OF LAW

1. Jurisdiction of this action is based on diversity of citizenship, 28 U.S.C. § 1332.

2. In order to avoid a policy of insurance, an insurance company must establish that declarations in the application or medical examinations are false, that these declarations are material to the risk assumed by the insurance company, and that the declarant had knowledge that the statements were false when he executed the application. See *Allstate Insurance Co. v. Stinger,* 400 Pa. 533, 163

A.2d 74 (1960); *Levin v. Metropolitan Life Insurance Co.,* 381 Pa. 615, 114 A.2d 330 (1955); *Baldwin v. Prudential Insurance Co. of America,* 215 Pa.Super. 434, 258 A.2d 660 (1969).

3. Mere inadvertent mistakes, even concerning material matters, are not sufficient to avoid an insurance policy. See *Evans v. Penn Mutual Life Insurance Co.,* 322 Pa. 547, 563, 186 A. 133 (1936).

■ 4. Since any misrepresentations on the insurance application were not knowingly made by Mr. Annett, the defendant cannot avoid the insurance policy, which was in full force and effect when Mr. Annett died.

5. Because Nationwide was on notice that Mr. Annett had been treated by a doctor within the five years preceding his application, it has waived any right to avoid the insurance policy because of Mr. Annett's negative response to question 4 on the Medical History and Declaration. See *Franklin Life Insurance Company v. Bieniek,* 312 F.2d 365 (3d Cir. 1962).

6. Judgment is entered in favor of plaintiff and against the defendant for the proceeds of the contested life insurance policy.

7. The defendant's conduct does not justify an award of punitive damages.

DISCUSSION

■ To avoid a policy of insurance the insurer must prove that false statements material to the risk were fraudulently made by the applicant for insurance. Since the evidence in this case clearly demonstrates the first two parts of this test, the crucial issue is whether Mr. Annett knowingly gave false answers when he applied for Nationwide life insurance. Resolution of this issue was difficult and required the balancing of a number of factors.

An important consideration which distinguishes this case from most cases in which insurance companies attempt to avoid payment on life insurance policies is the absence of a motive for Mr. Annett to defraud Nationwide. Mr. Annett

already owned comparable life insurance when approached by defendant's agent, Mr. Mikolichick, and he dropped the earlier policies shortly after the Nationwide policy became effective. Certainly this is an unlikely course of action for someone who knew he had serious health problems, especially one who intended to increase his insurance coverage or otherwise commit a fraud on the second carrier.

On the application for insurance itself the answers now being challenged by the defendant are not so blatantly false that knowledge of their falsity must be presumed. See *Anastasio v. Metropolitan Life Insurance Co.,* 149 Pa.Super. 414, 27 A.2d 510 (1942). Given the lack of any evidence that Dr. McClimans told Mr. Annett what specific health problems he had and what the treatment was for, it certainly is possible that Mr. Annett was unaware that he was being treated for diabetes, liver disease, alcoholism, or even high blood pressure. There was absolutely no direct evidence that he had ever been informed by anyone as to any such conditions and it is within the realm of reasonable possibility that he was never so told even by his own doctor.[1] Similarly, Mr. Annett could have declared truthfully that he was in "sound health." There simply is no evidence of Mr. Annett's knowledge of his medical problems. His multiple employment as a rigger, a grave digger and a janitor are all inconsistent with knowledge of serious medical problems, especially of a heart condition.

Several other answers challenged by Nationwide are to questions that are sufficiently ambiguous that under the circumstances a finding of fraud cannot be made. For example, while Dr. McClimans observed that Mr. Annett was "nervous and snappy," this nervousness would not seem to prevent a negative answer to a question concerning "disease or disorder of brain or nervous system." Likewise, a question asking whether the

applicant had "ever been a patient or been under treatment or observation" in a hospital could reasonably have been interpreted as not covering a single instance of out-patient treatment following a fall.

■ Of course, several of Mr. Annett's answers clearly are false and do concern matters of which Mr. Annett should have been aware. Question 8(d) asked if Mr. Annett had ever had x-rays, electrocardiograns, or other medical tests. Certainly the brain scan performed in November of 1969 would qualify as a "medical test." Question 7(b) asked if Mr. Annett had been advised or treated by a doctor for fainting spells within the past 10 years, and Dr. McClimans' records indicated that Mr. Annett had had a couple of blackout spells. While Mr. Annett should have known that the answers to these questions were false, I believe that the incorrect answers were given inadvertently and are due to mistake, rather than fraud. This conclusion is supported by the lack of a motive for false statements, and by the distracting circumstances under which the application was filled out. Moreover, because Nationwide did not produce its agent, Mr. Mikolichick, as a witness at trial, there is very little evidence in the record concerning what explanations and assistance he gave to Mr. Annett when the application was completed. While Mr. Mikolichick's nonappearance is not evidence that he incorrectly explained certain questions to Mr. Annett, it does support the plaintiff's testimony that her husband did not carefully consider his answers on the application. Under all the circumstances, a finding that Mr. Annett knowingly misrepresented the state of his health on the insurance application is unwarranted.

■ One additional ground on which Nationwide might avoid the insurance policy must be discussed. On the "Medical History and Declaration" Mr. Annett

---

1. *This court did not have the benefit of any* testimony from Dr. McClimans because he has been seriously ill since this suit began, and was unavailable to testify either at the trial or in a deposition.

denied that he had consulted or been treated by a doctor within the past five years. This answer is clearly incorrect and an inference of fraud could be justified. On the other hand, it is entirely possible that Mr. Annett simply made a mistake on the "Medical History and Declaration." In any event, Nationwide has waived any right to avoid the policy on the basis of this answer, because Nationwide had notice that Mr. Annett had answered "yes" to a nearly identical question on the insurance application. This obvious inconsistency would have alerted a reasonable insurance company to make further inquiry about Mr. Annett's treatment by a doctor. The fact that Nationwide issued the policy without making such inquiry must be considered a waiver of the materiality of any insufficiencies in the obviously inconsistent answers. See *Franklin Life Insurance Company v. Bieniek,* 312 F.2d 365 (3d Cir. 1962).[2]

■ Finally, the plaintiff in this case has sought punitive damages against Nationwide. Although Nationwide acted somewhat negligently in issuing this policy without interviewing Dr. McClimans, its refusal to pay upon Mr. Annett's death was not malicious or even unreasonable in light of the information then in its possession. Consequently, punitive damages are unwarranted.

### ORDER

AND NOW, to wit, this 12th day of March, 1976, judgment is hereby entered in favor of the plaintiff and against the defendant for the proceeds of the contested life insurance policy, together with interest from the date of William Annett's death.

AND IT IS SO ORDERED.

---

2. The plaintiff has argued at length that Nationwide's failure to inquire about the identity of the doctor that Mr. Annett had admitted seeing was a waiver of all misrepresentations in the application, since a simple check with Dr. McClimans would have revealed the true state of Mr. Annett's health. While the case of *Love v. Metropolitan Life Insurance Co.,* 99 F.Supp. 641 (E.D.Pa.1951), does support the plaintiff's position, that case was significantly narrowed by the Third Circuit Court of Appeals in *Franklin Life Insurance Co. v. Bieniek,* 312 F.2d 365 (3d Cir. 1962). In *Franklin Life* the Court held that acceptance of an incomplete ambiguous, or obviously unresponsive answer only waives objections to that particular answer; the insurer is not estopped from avoiding the policy because of material misrepresentations in other answers. Because I have found that Mr. Annett did not knowingly misrepresent any material facts in his application for insurance, I need not resolve this issue of the scope of the insurance company's waiver.